BAILEY v. BAILEY.

1. VOID JUDGMENT—INFANTS—SERVICE.—Where it appears upon the face of the record that the infant heirs of a mortgagor were not made parties by personal service to the foreclosure proceedings, these infants may bring action to recover the land from the purchaser at the foreclosure sale.

2. VOID SALE—SUBROGATION.—But where the *bona fide* purchaser at such void judicial sale has paid his bid, and the money has been applied to the mortgage debt, he is, to that extent, subrogated to the rights of the mortgagee. Cathcart *v.* Sugenheimer, 18 S. C., 131, followed.

3. APPEAL—AMENDMENT.—The case remanded, with leave to the defendant to amend his answer within a time limited by pleading his equitable right to subrogation.

4. SUBROGATION—PETITION FOR REHEARING, based upon evidence not in the appeal record, refused, and the right of subrogation limited and declared.

Before WALLACE, J., Lancaster, March, 1893.

Action by Robert E. Bailey and Nancy Bailey, by guardian, against James D. Bailey, for the recovery of an interest in land and damages. Verdict was for plaintiff for two-thirds of the land and $360 damages. From the judgment entered thereon, the defendant appealed.

*Messrs. R. E. & R. B. Allison,* for appellant.

*Messrs. Jones & Williams,* contra.

April 23, 1894. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. It seems that in the year 1871, Jehu Bailey, the father of the plaintiffs, purchased the tract of land, described in the complaint as containing 252 acres, for the sum of $567, in two instalments, upon a credit. Titles were made to him by the sheriff, and he in turn executed a bond and mortgage of the premises to one James D. Caskey, Esq., then sheriff of Lancaster County, who had sold the property by order of the court. The mortgage debt remained unpaid until the mortgagor, Jehu Bailey, some time afterwards, died seized and possessed of the said land; but it had not been paid for, when James R. Hunter, Esq., successor of said Caskey as

sheriff of said county, on or about December, 1876, brought suit against the plaintiffs and their mother, Susan Bailey, the heirs at law of the mortgagor, Jehu Bailey, to turn over the money to the estate to which it belonged. The widow, Susan Bailey, and her two minor children, the plaintiffs, were named as defendants in the suit for foreclosure. Service was made by James R. Hunter, sheriff, who was the nominal plaintiff, through his deputy. He served the widow personally, but the two infant children were not served personally—copies left with their mother for them. Judgment of foreclosure was rendered, and in 1877 the land was sold by the sheriff, and bid off by the defendant, James D. Bailey, who paid his bid in cash, received sheriff's title, and went into possession immediately and has continued in possession ever since. And he now sets up equities in his own behalf—that he is a purchaser for valuable consideration without notice; that he has placed improvements on the premises while in his possession, and claims discount for money paid, taxes, &c. The cause came on for trial before Judge Wallace and a jury. His honor, the judge, charged, that the plaintiffs being infants in 1876, at the time of the foreclosure proceedings and sale, and not made parties according to the strict requirements of the Code of Procedure, then recently adopted by the State, the sale was as to them absolutely void, and they were entitled, strictly, to two-thirds of the land sued for.

There is no question of collateral attack upon the judgment of foreclosure, for the defect of service upon the infants is plain upon the face of the record, which proves its own infirmity. See *Turner* v. *Malone*, 24 S. C., 398, and *Crocker* v. *Allen*, 34 *Id.*, 452. But we cannot resist the conclusion that there is merit in the equitable defences set up by the defendant in the case, as was done by Mrs. Sugenheimer in the case of *Cathcart* v. *Sugenheimer*, 18 S. C., 131, in which, among other things, this court said: "But if, from the increased strictness latterly required in this State on the subject of making parties [and especially infant parties], the lunatic must be regarded as a necessary party, we think there is much in the equitable defence set up. It is quite cer-

tain that the defendant purchased the lot *bona fide,* relying upon the orders of court, and that improvements have been made, and that the purchase money went towards satisfaction of plaintiff's debts. It does not appear that he made any offer of the money thus expended for his benefit. We cannot see why the purchaser in this case should not be entitled to be subrogated to the claims, which she by her purchase paid. * * * 'If, by a sale of the lands of a decedent, his debts are paid, and it turns out that the sale is void, the purchaser has the right to be subrogated to the claims, which he has by his purchase paid. And he has also the right to retain possession of the property as security for the repayment of the sums to which he is entitled.' Freeman on Void Judicial Sales, 51. As Judge Story said, in *Bright* v. *Boyd,* 1 Story, 478: 'Such principle has the highest and most persuasive equity, as well as common sense and common justice, for its foundation.' " We cannot distinguish this case from that of Mrs. Sugenheimer. There the purchase money of the lot went towards paying the debts of the lunatic; and here it may have gone to pay the debt of the ancestor of the plaintiffs.

But as the question as to the right to subrogation was not in terms made by the pleadings, and of course was not considered or decided by the Circuit Judge, we think it proper to remand the case to the Circuit Court, to enable the defendant, if so advised, to amend his answer so as to make the question of his right to the equity of subrogation, by showing that the money, or any part thereof, which he paid for the land in question, went towards the payment of the debts of the ancestor of the plaintiffs, or into the hands of his heirs at law.

The judgment of this court is, that the conclusions reached by the Circuit Judge be approved; with this qualification, however, that the cause be remanded to the Circuit Court, in order that the defendant, if so advised, may so amend his answer, so as to make the question as to the equity of subrogation, as to the purchase money of the land paid by him: *Provided,* The defendant shall, within twenty days after notice of the filing of this decision, institute proper proceedings to make such amend-

ment; and upon his failure to do so within the time prescribed, that the judgment of the Circuit Court be affirmed.

A petition was filed asking for a rehearing of this case, on the ground that the sheriff's report on sales (a certified copy whereof was attached to the petition) shows that the land sold for less than an amount sufficient to pay costs, and, therefore, there was no basis for a claim of subrogation; and upon the further ground that this court should more explicitly declare to what extent the subrogation should be allowed. On this petition the following order was endorsed May 24, 1894,

PER CURIAM. After a careful consideration of this petition we are unable to find that the court has either overlooked or disregarded any material fact or principle of law; and, therefore, there is no ground for a rehearing. The additional evidence incorporated in the petition tending to show the amount bid for the land by the defendant at the sale made by the sheriff, and the disposition made of the proceeds of such sale, cannot be considered under this petition, for the obvious reason that no such evidence was offered at the trial, and cannot now be injected into the case. To avoid any misapprehension, it may be as well to add that the sole question to be considered in the new trial is whether the defendant can establish his right to subrogation, and if so to what extent. Of course, if the defendant fails to do so, then the judgment below will stand affirmed. It is, therefore, ordered, that the petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.