ALICE DELL COVEY, BY, ETC., APPELLANT, v. W. C. PIERCE ET AL., RESPONDENTS.—82 S. W. (2d) 592.

Kansas City Court of Appeals.   May 13, 1935.

*Randolph & Randolph* and *Nile L. Vermillion* for appellant.

*Wright & Ford* for respondents.

REYNOLDS, C.—Plaintiff, by next friend, prosecutes this action against defendants as trustees under the will of Sarah J. Richardson, deceased, for an accounting by them as such of a certain trust estate provided in said will and for their removal as such trustees and the appointment of another trustee as their successor and for the payment by them to such successor when appointed of a sum of money sufficient to restore such estate and for judgment against them, upon an accounting, for such sum as may be found due and owing the trust estate by them with interest and for any and all other equitable relief that might and should be required in the premises.

It appears from the record that the will of Sarah J. Richardson, creating the trust estate, was admitted to probate in the Probate Court of Nodaway County, Missouri, on February 13, 1928. It is necessary to consider only the following provisions thereof in the determination of the questions involved herein:

## "III.

"All the rest, residue and remainder of my property of whatever kind and nature and wheresoever situate, I give, devise and bequeath to W. C. Pierce and A. K. Frank or the survivor of them as trustee upon the following trust:

"(a) Said trustees shall keep the money loaned at the best rate of interest obtainable, collect the interest thereon and annually pay to my great niece, Alice Dell Covey (daughter of Anna May Covey) the net income therefrom.

"(b) Said trust shall continue until my great niece, Alice Dell Covey arrives at the age of twenty-one years and the proceeds as set out shall be paid to her annually during all that time.

"(c) This trust shall continue until the said Alice Dell Covey reaches the age of twenty-one years when the whole of said undisbursed principal and interest shall be paid, and I give, devise and bequeath the same to her.

"IV.

"I nominate and appoint W. C. Pierce, executor of this my last will and testament but in case of his death, refusal to act or disability in any wise, then I nominate and appoint A. K. Frank."

The defendant W. C. Pierce qualified as executor of the will upon the death of the testatrix and made final settlement of his accounts as such executor in the probate court, upon which settlement he was directed to pay to himself and A. K. Frank as trustees a balance in his hands of $2972.56, comprising the trust estate under said will, and to file their receipt therefor.

From the evidence in the record, it appears that this balance consisted of cash in the sum of $972.56 and a note for $2000 inventoried among the assets of the estate, which was on hand at the death of the testatrix against one Charles A. Jensen, of date December 18, 1925, due January 1, 1931, with accrued interest unpaid thereon to date of such inventory of $15, amounting at such time to $2015.

On April 29, 1929, a few days prior to the final settlement made by defendant Pierce as executor, the defendants as trustees under the will, by their joint receipt in writing, acknowledged receipt from the defendant Pierce as executor of the trust estate mentioned in the sum of $2972.56, which receipt being delivered to the said Pierce was by him filed in the probate court; and his discharge as executor was procured to be entered thereupon.

At the time of such final settlement with the probate court, it was ordered that the defendants Pierce and Frank as trustees make settlement of their accounts in the probate court each year during the existence of the trust estate. Thereafter, defendant Pierce as trustee, on September 2, 1930, September 8, 1931, and September 5, 1932, filed settlements in said estate in the probate court, purporting to be annual settlements showing the condition of the trust estate at such times.

On April 29, 1929, defendants, as such trustees, deposited in the Farmers Trust Company at Maryville, Missouri, the sum of $972.56 in cash out of said trust fund, which was entered upon the books of

said trust company as follows: "Farmers Trust Company. Alice Dell Covey. April 29, 1929, Maryville, Missouri. $972.56. From Richardson." Later, on January 9, 1930, the defendants as trustees deposited the further sum of $2,120 out of said trust estate, being the proceeds (including interest thereon to the date of its collection) of the Jensen note above referred to, which note at that time was collected by the defendants as trustees. Said latter mentioned deposit was entered upon the books of said trust company as follows: "Farmers Trust Company, deposited by W. C. P. and A. K. F. Tr. Alice Dell Covey. January 9, 1930. $2120.00," underneath which was noted in pencil as follows: "Jensen."

At the time that each of said deposits was thus made in the Farmers Trust Company, such company was a regularly incorporated banking institution and trust company at Maryville, Missouri, of which defendants were the active managing officers. Of its 2000 shares of stock, the defendant Pierce owned 900. The defendant Pierce was the president and, in addition to being a large stockholder, was also a director. The defendant Frank was the cashier and an active officer and was otherwise interested as a stockholder. From certain exhibits in the record, it appears that it had a capital stock of $200,000 and carried a surplus of $40,000. Its individual deposits were ordinarily around $950,000, its time certificates of deposit ordinarily around $108,000, and its savings deposits ordinarily around $134,000. Its total liabilities were ordinarily listed around $1,735,000, and its total assets and resources at the same figure.

After having been deposited in said trust company, the trust funds as aforesaid were permitted by the defendants to remain upon deposit therein until said company, on April 7, 1930, was closed for business and placed under the control of the state finance department for liquidation and were on deposit in said trust company at the time it closed and passed with the other assets of the company under the control of the finance department.

During all of the time between the date of the first deposit and the closing of the trust company, the defendants continued in their relations with said company as the active managing officers thereof and as stockholders and directors. The trust company passed under the control of the finance department, as an insolvent institution, upon the order of its board of directors, for the purposes of liquidation, and was, at the time of the trial in the court below, in the process of liquidation. For some weeks prior to the closing of the trust company, between March 3, 1930, and April 7, it met with heavy and unexpected withdrawals of its individual deposits, approximately $110,000, resulting in the reduction of its cash and cash items on hand and in items due from other banks to such an extent that the cash reserve required by law to be carried by it was reduced

below the required limits, by reason of which it was compelled to close and cease business.

The grounds on which the plaintiff seeks relief are that defendants have, by the manner in which they have handled the trust fund under their care, failed properly to manage and protect the same and have neglected and violated their trust with respect thereto.

The matters relied upon as constituting such neglect and violation of trust are set out in the petition as follows:

"Plaintiff further states that instead of lending said sum of money at the best rate of interest obtainable, the defendants on the 30th day of April, 1929, did deposit the sum of nine hundred seventy-two dollars and fifty-six cents ($972.56) of said money in the Farmers Trust Company, a banking and trust company located in the town of Maryville, Missouri, of which said bank and trust company the defendant, W. C. Pierce, was president and officer and director thereof, and the defendant A. K. Frank, was assistant cashier thereof, and said defendants had full and complete charge of said bank and trust company, and full and complete knowledge of the condition and affairs of said bank and trust company.

"That on the 10th of January, 1930, said defendants did deposit a further sum of twenty-one hundred twenty dollars ($2120) out of said fund in said Farmers Trust Company; that the defendants failed and neglected to lend said money and at the time of depositing the funds from said trust estate in said bank, said bank and trust company was in an imperiled condition, the assets of said bank were frozen and impaired, all of which condition the defendants had knowledge thereof, or by the exercise of ordinary care should have had knowledge thereof, and that said defendants continued to allow the funds of said trust estate to remain on deposit in said bank and said trust funds did remain on deposit in said bank until the failure of said bank in April, 1930, and after the failure of said bank and during the liquidation thereof by the banking department of the State of Missouri, defendants failed and neglected to make application to the court having jurisdiction of the liquidation of said bank, for the purpose of having the funds of said estate on deposit in said bank at the time of the failure thereof, declared a trust fund and paid out and allowed as a preferred claim in the liquidation of the assets of said bank.

"And that the acts of the defendants in depositing the funds from said trust estate in the said bank in which they were personally interested as officers, directors and stockholders was done for the purpose of increasing the available cash on hands of said bank and the said defendants thereby used said money for their own personal use in so doing.

"That said defendants in the administration of said trust estate failed and neglected to apply to the circuit court to administer said

estate under the jurisdiction of said circuit court where the administration properly belonged, and failed and neglected to make and execute any bond for the faithful discharge of their duties in the handling of said trust estate.''

The defendants answered separately and each by way of general denial.

From a finding and judgment for the defendants, the plaintiff, after an unsuccessful motion for a new trial, prosecutes this appeal.

OPINION.

It will be noticed that, by paragraph (a) of the third clause of the will of the deceased testatrix, the trustees were required to keep the trust fund lent at the best rate of interest obtainable and annually to collect the interest thereon and to pay over annually, to the beneficiary indicated, the net income derived. The duty thus imposed upon the trustees was that of lending and keeping lent the trust fund committed to them, with a view to its safety and to its earning a profit, and that of collecting and paying over annually to the beneficiary the profit thereon until such time as they were required to pay over the principal thereof. [Drake v. Crane, 127 Mo. 85, 1. c. 103, 29 S. W. 990.] By accepting the trust in this case, defendants became bound to execute it in accordance with the duties thus imposed by the provisions of the will of the deceased, which was the trust instrument. [Rapp v. St. Louis Union Trust Co. (Mo. App.), 229 S. W. 1105; Sec. 567, R. S. 1929; 65 C. J., sec. 519, p. 647.]

''The trust itself, whatever it be, constitutes the charter of the trustee's powers and duties; from it he derives the rule of his conduct; it prescribes the extent and limits of his authority; it furnishes the measure of his obligations.'' [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1062, p. 2426, 1. c. 2427.]

To meet the duties imposed upon them and their obligation with respect to the discharge thereof, they were required to employ such prudence and diligence as men of ordinary prudence, discretion, and intelligence employ in their own like affairs, not with a view of speculation or of experimenting but with a view always to the safety of the capital employed. [65 C. J., sec. 672, pp. 795, 796; 3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1070, p. 2447.] They, however, are not to be considered insurers of the safety of the trust funds or of their productiveness. They may be held for loss in connection with the management of such funds or for loss of income therefrom only in event of their failure to exercise that care and intelligence required of them, the measure of which is above set out. [Powell v. Hurt, 108 Mo. 507, 17 S. W. 985.]

Although it became the duty of the defendants to lend the trust fund coming into their hands, they, nevertheless, deposited the same in the trust company, $972.56 thereof on April 29, 1929,

and $2120 thereof on January 9, 1930, of which latter amount $120 was interest. They permitted such deposits to remain in the trust company, unlent, until the trust company failed and passed under control of the finance department for liquidation; and such deposits remained in said trust company and were therein at the time it closed.

The question, in the first instance, arises whether, in view of their trust, the length of time which such deposits were left in the trust company by the defendants, unlent, prior to its closing, was a reasonable time within which they might have lent the same. In a consideration of such question, it may be conceded that, upon receipt of the funds, the defendants had the right to deposit them temporarily for safe keeping in a bank or trust company of good reputation in the community for solvency and financial responsibility (unless they had knowledge to the contrary concerning the affairs of such bank or trust company or were in the possession of facts sufficient to put them upon their inquiry as to such solvency and financial responsibility) until they could, in the exercise of diligence and prudence, lend the same on reasonably safe security and in some reasonably safe manner without being liable for any loss of said funds on account of the failure of the bank or trust company. [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1067; 1 Perry on Trusts and Trustees (6 Ed.), art. 443.]

The item of $972.56 deposited by the defendants in the trust company was cash received from the executor of the estate of the deceased testatrix and was permitted by defendants to remain in the trust company for practically one year prior to the time it closed. The item of $2120 was the proceeds of the Jensen note, among the assets of the deceased testatrix's estate at the time of her death, which was turned over to the defendants by her executor as a part of the trust fund. This note, in the principal sum of $2000, with $120 interest thereon, was collected by the defendants on January 9, 1930, practically a year prior to the due date thereof; and the proceeds thereof were, by the defendants, on said date, deposited in the trust company, where they were permitted to remain until the trust company failed, and were in such trust company at such time.

It is suggested by the defendants in their brief that, since they were required as trustees to lend the funds in question at the highest rate of interest obtainable and upon security sufficient to insure their safety, the only security permissible to be taken by them was real estate security; that judicial notice would be taken by the court of the facts that, at the time such funds came into their hands, real estate values were rapidly shrinking and it was difficult to obtain suitable loans based upon real estate security; and that, under such conditions, it could not be said, as a matter of law, that the time during which said money was permitted to remain in the trust company was

not a reasonable time but was an unreasonable time. While we might take judicial notice of the conditions prevailing at such time as matters of current history tending to make it difficult to secure suitable loans of the character required, yet we are also confronted with judicial notice of the fact that, at such time and during the times that such funds were deposited and permitted to remain in the trust company, the loan business in the country, although somewhat depressed and limited, continued and suitable loans of the character required were, upon proper effort, being readily obtained and carried.

There is an entire absence of any fact or facts in the record tending to show that the trust funds in question could not have been lent upon safe and suitable security at the time they were received by defendants or at sometime soon thereafter and prior to the closing of the trust company or tending to show that the defendants made any effort or exercised any diligence whatever to secure a suitable loan or loans for the same at anytime after they were received by them and while they were deposited in the trust company. There is no reason appearing why they were not lent and why some effort was not made to lend them.

Considering that it was the duty of the defendants under the terms of the will to lend the funds and keep them lent so that an annual income might be derived therefrom, that duty cannot be said to be discharged by permitting the same to remain on deposit in the trust company for the time that either of the same remained therein, as shown by the evidence in this case, especially in the absence of any explanation showing some reason why they were not lent or why they could not have been lent or showing some effort upon the part of the defendants to have lent them. The burden was upon the defendants to show that they could not have lent or kept them lent with reasonable safety to such funds in the exercise of that ordinary prudence, care, and diligence required of them as hereinbefore defined. [65 C. J., art. 708, p. 827.]

■ It is suggested by defendants that, by analogy to time fixed by law for the payment of legacies under a will, one year should arbitrarily be taken as a reasonable time within which to invest or lend the trust fund. However, there is no analogy between the situation involved in a case under such circumstances as are here found and that wherein the administration of an estate is required and is in process, in which the payment of legacies is involved. The purpose of the postponement for one year of the payment of legacies under a will is in order that those in charge of the administration of the will of the deceased testator or testatrix may have time to ascertain whether there are funds existing in the estate available for the payment of such legacies or whether all of the funds of the estate may be required for the payment of the debts of the deceased and for the payment of the expenses of administration. In such case, the ad-

ministrator or executor may ordinarily have one year after the death of the testator within which to make payment of legacies or to make investments of a trust character. [1 Perry on Trusts and Trustees (6 Ed.), art. 444, p. 714; 65 C. J., art. 673, p. 797.]

In this case, the year since the death of the testatrix had long since passed. The amount available for the trust estate was ascertained upon final settlement of the estate of the deceased testatrix in May, 1929; and it was then known that none of the same would be required for the payment of her debts but that all of the same was available as a trust fund; and it was, under the orders of the probate court, at or about that time, turned over to the defendants by the executor of her estate for the trust. The trust fund therefore came into the defendants' hands free from any liability for the payment of debts, to be administered by them as trustees in accordance with the trust provisions of the will. There was no necessity for waiting. It was their duty at once or within a reasonable time thereafter diligently, but allowing for the prudence required, to have followed the directions of the will and lent it so as to have made it reasonably safe and productive. [1 Perry on Trusts and Trustees (6 Ed.), art. 452, p. 725.] The trust provided in the will was for the benefit of the beneficiary named therein, and it was provided in the will that the interest on such fund should be collected annually and paid over to her annually. Not only did the will by implication thus provide for the diligent lending of the money but, by its express terms, directed that the money should be lent by the trustees.

It is suggested by the defendants that, in any event, the three months' period during which the item of $2120 was allowed to remain in the trust company was not an unreasonable time to be required by defendants for lending the same. However, under all the circumstances existing, we do not so agree.

■ Moreover, there was no apparent necessity for it to have been in the trust company rather than to have continued lent as it was. Such sum represented the proceeds of the Jensen note. At the time of its collection, January 9, 1930, such note had yet one year to run before coming due. Such note was presumably safe. It was earning an annual income. There is no showing in the record that the pecuniary responsibility of the maker had become in any way questioned or that its security had become wasted or insufficient, nor is there any showing of any matter by which the prime solvency of such note was affected or of any matter whatever that required the collection of such note at such time. If the conditions at that time were as now suggested by them—such as made it hazardous to relend the proceeds thereof and impractical so to do in the exercise of ordinary prudence—it must have been apparent to them that the trust estate would suffer harm from the collection of the note at that time, in that it would be deprived thereby of the interest

thereon by reason of their inability diligently and prudently to re-lend its proceeds. Under the circumstances, defendants were not justified in collecting or receiving payment thereof and allowing it to lie idle for any indefinite time in the trust company. It was not an act of good faith upon their part to the trust estate so to have done. It was not to the interest of the trust estate that payment should have been collected or received at that time and the pro-ceeds thereof placed in the trust company instead of being kept lent or thereafter promptly being lent. It was their duty at all times to have acted wholly for the benefit of the trust estate and the bene-ficiary. [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1075, p. 2468.] Considering their primary duty to keep the funds lent, they, in the light of their suggestions, under all of the circumstances dis-closed by the record, are held to have been unmindful of their trust in the collection of such note at such time and the placing of the proceeds thereof in the trust company rather than leaving such pro-ceeds lent, by which they have become liable for the loss thereof.

■ It is well settled that every violation by a trustee of a duty that equity lays upon him, whether wrongful and fraudulent or done through negligence or arising through mere oversight and forget-fulness, is a breach of trust. The term includes every omission and commission which violate in any manner any of the three fol-lowing obligations: (1) that of carrying out the trust according to its terms; (2) that of care and diligence in protecting and investing the trust property; (3) that of using perfect good faith. [3 Pom-eroy's Equity Jurisprudence (4 Ed.), art. 1079, pp. 2479, 2480.]

■ The failure to carry out the trust according to its terms in lending and making the funds productive and the failure properly to care for and protect them by leaving them in the trust company for an unreasonable time and by collecting them when safely lent and depositing them in the trust company where they were allowed to remain idle for a time, to be regarded under the circumstances as unreasonable, were breaches of duties cast upon them by equity (regardless of whether their handling of such funds in such regard was willful or otherwise or the mere result of oversight, neglect, and forgetfulness) by which they became liable for the loss of such funds upon the failure of the trust company. [3 Pomeroy's Equity Juris-prudence (4 Ed.), arts. 1071, 1072, pp. 2455-2457, arts. 1075, 1079, supra.]

■ Not only so, but the defendants were the managing officers of the trust company in which said funds were deposited and were other-wise interested as stockholders in such trust company; and, in ad-dition to being a stockholder, defendant Pierce was a director. He owned 900 of the 2000 shares of stock for which it was incorporated. Conceding their right, notwithstanding their interests therein and connection therewith, to have deposited said funds in said trust com-

pany without, by reason of such mere deposit, becoming liable for said funds in the event of their loss (Cornet v. Cornet, 269 Mo. 298, 190 S. W. 333), still the fact that they were so deposited in the trust company in which defendants were so financially interested and of which they had the active management and control is a circumstance for consideration, along with others, in determining their liability for the loss thereafter occasioned said funds, upon the failure of the trust company, by reason of having been so deposited and allowed to remain therein. [In re Culhane's Estate, Cashman et al. v. Pontiac Trust Co. et al., 256 N. W. 807.]

■ It was the duty of defendants to protect the trust estate from loss and injury. [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1067, p. 2441.] As the active managing officers of the trust company, they were in touch with the financial condition thereof, as tending to render it solvent and safe or otherwise and as tending to render it a safe or an unsafe place in which to keep said funds. The duty was upon them at the first indication of impending loss or injury to withdraw said funds from the trust company. [1 Perry on Trusts and Trustees (6 Ed.), art. 444, supra.] There is sufficient in the record to show that, for thirty days prior to its closing if not longer, the trust company was riding upon troubled seas. It suffered unexpected withdrawals of $100,000 and over in deposits and finally crashed by reason of inability to meet a check or draft thereon for $40,000. Defendants knew that the safety of the funds was endangered by the troubled condition of the trust company. It was their duty to have protected or withdrawn them.

It is no answer to this proposition to assert that they were also trustees of the assets of the trust company for the other depositors and creditors thereof generally and that they could not therefore have withdrawn the trust funds in question and have injured or plunged the trust company into further trouble without violating their trust for such other depositors and creditors. Whatever their duty to the trust company and its other depositors and creditors, their duty to the trust fund in their hands as such, the especial care of which they had voluntarily assumed, was entirely another thing. [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1077, p. 2473.] If true that they held the assets of the trust company in trust for all depositors and creditors alike and the trust funds in question were part of such assets, yet as long as the trust company was a going concern open and doing business, the defendants as its managing officers and directors had the right to apply its assets, so long as they acted in good faith, to the payment of any such of its debts as they might determine, in the usual and ordinary course of business. [Farmers' Bank of Deepwater v. Moberly (Mo. App.), 78 S. W. (2d) 906.] The trust company and the defendants as its man-

aging officers were constantly so doing at the time the trust company closed.

That defendants were placed in an embarrassing situation, if so, by reason of their dual trusteeships, as suggested in their brief, is no reason why the trust fund involved herein should suffer. That they accepted dual positions as trustees for the creditors of the trust company and as trustees for these special funds was a matter of their own volition. Any embarrassing situation arising from a conflict between themselves as trustees in their two separate capacities was therefore a matter brought about by their own voluntary acts and occasioned wholly thereby. They accepted the trust fund and the care of it, to be managed in accordance with the mandates of equity and the law; and, in accordance with such mandates, they are required to administer it. [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1077, supra; 65 C. J., art. 519, l. c. 651.]

Anyhow, if by their own voluntary act they deposited the trust funds in a place where they were at the time or afterward imperiled and they were unable to withdraw and extricate them from such peril and by reason of such inability so to withdraw and extricate them they were lost, they were personally liable for the loss. [1 Perry on Trusts and Trustees (6 Ed.), art. 443, p. 713 et seq.; 3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1077, supra.]

It is insisted by plaintiff that the defendants in depositing and permitting the trust funds to remain in the trust company did not act in good faith with the trust estate and the beneficiary thereof but that it was done for their own personal advantage in connection with their interest as stockholders in the trust company and as the active managers thereof.

It is the law that trustees must act in perfect good faith with the trust estate and its beneficiaries and that they must not take any advantage therefrom directly or indirectly, except their compensation. [3 Pomeroy's Equity Jurisprudence (4 Ed.), art. 1075, supra.]

It has already been determined herein that they failed to act in that good faith required by equity when they collected the Jensen note under the circumstances surrounding, without any necessity for its collection, one year before due, and deposited the proceeds thereof in the sum of $2120 in the trust company, to lie idle indefinitely therein, and that such operated only to the advantage of the trust company and to the personal advantage of the defendants as stockholders therein and as managers thereof and to the detriment of the trust estate.

Whether in making the deposit of $972.56 in April, 1929, they were acting in good faith with the trust estate at that time might depend upon whether or not at such time they had knowledge of facts impeaching the solvency of the trust company and whether they made such deposit seeking an advantage to the trust company and conse-

quently seeking their own advantage as stockholders and managers. There is no substantial evidence in the record that the trust company at such time was insolvent or unsafe. For the purposes of this case, however, it is not material that it should have been unsafe at such time and that defendants had knowledge thereof and for reason thereof made such deposit in order to help it and themselves; but the facts in the record with reference to the heavy withdrawals from the trust company within thirty days prior to its failure and their failure to withdraw the same therefrom do give reason for holding that, in failing to protect such item by withdrawing it during said thirty days, they were not acting in that good faith required of them by equity. And the failure to withdraw the ˉdeposit of the item of $2120 during said period of thirty days, when such heavy withdrawals were being made, was another act by defendants lacking in that good faith toward the trust estate and its beneficiary required of defendants by equity in the protection of said funds, in addition to those with respect thereto hereinbefore referred to.

Viewing all of the circumstances, we hold that, in the management of the trust, they were unmindful of their obligations as trustees and failed to act in good faith toward the trust estate and its beneficiary but acted for the advantage of the trust company and themselves through it (whether actively and willfully so or not is immaterial) thereby violating their trust, by reason whereof they have become liable for the loss of the principal of the trust estate and the interest thereon while under their control and liable to account therefor and have become subject to removal as such trustees.

■ The fact that defendants never qualified as trustees in the Circuit Court of Nodaway County and never submitted their management of the trust funds to its supervision and control or sought its advice or approval with respect thereto in no way militates against the jurisdiction and authority of the court over the funds of such trust estate or over defendants as the trustees thereof. It has jurisdiction to remove them as such trustees for any of the causes noted, to appoint another as their successor in the management of the trust, and to compel them to account for and turn over the trust fund with interest thereon to such successor upon the application of a beneficiary, whether qualified therein as such or not. [3 Pomeroy's Equity Jurisprudence (4 Ed.), arts. 1086, 1087, pp. 2503-2510; 1 Perry on Trusts and Trustees (6 Ed.), art. 276, p. 471.] Courts of equity have such power and jurisdiction inherently in all cases. Such jurisdiction is not dependent upon statutory authorization. [Same authorities, supra.] Indeed, no question appears raised by defendants respecting the jurisdiction and power of the court in the premises.

■ We have carefully considered the conclusions involved and necessarily reached in the rendition of the judgment in favor of

the defendants by the learned chancellor below; but, upon a consideration of the whole matter upon the record before us and after giving due deference to his conclusions and judgment, we are constrained to the conclusion that the defendants should be held personally liable in this case for the loss of the trust funds in their care, with interest thereon, and that the conclusions reached and the judgment to the contrary rendered in the court below are erroneous.

The judgment of the circuit court is reversed; and the cause is remanded, with directions to the court below to proceed in conformity with the views expressed herein and remove the defendants as trustees and appoint a successor trustee to them and require them to account for the funds found to have come into their hands with interest thereon and to pay such funds and interest over to such successor when appointed and qualified and, upon such accounting and payment over, to discharge defendants, as trustees. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed and cause remanded with directions. All concur.