17145

MARION J. ERWIN, Probate Judge, Abbeville County, Appellant, v.
E. A. PATTERSON ET AL., Respondents
(92 S. E. (2d) 464)

*Messrs. J. M. Nickles,* of Abbeville, and *Doyle & Doyle,* of Anderson, *for Appellant,*

*Messrs. Doyle & Doyle,* of Anderson, *for Appellant,*

*Ralph J. Syfan, Esq.,* of Abbeville, *for Respondents,*

April 12, 1956.

Moss, Justice.

I. D. Knox died on June 15, 1928 and his son, David S. Knox, who was a minor seventeen years of age, became entitled to receive the sum of $833.34 from an insurance policy on the life of his father. It became necessary because of the minority of David S. Knox that some suitable person be appointed his guardian. Pursuant to due application by the said minor, E. A. Patterson was, on June 22, 1928, by the Probate Court of Abbeville County, appointed his guardian. In order to qualify as guardian E. A. Patterson executed a bond in the sum of $3,000.00, conditioned for the faithful performance of his duties as guardian, with

W. T. Patterson and J. M. Patterson as sureties thereon. E. A. Patterson, upon his qualifying as guardian of David S. Knox, received the insurance fund and deposited same in the Bank of Antreville, of which he was not only a majority stockholder but he was also its president, cashier, general manager and a director thereof.

The record shows that the Bank of Antreville failed in January, 1931 and at such time there was on deposit to the credit of the guardian in said bank, the sum of $844.44.

This action was instituted on August 19, 1931 by Addison B. Carwile, the then Probate Judge of Abbeville County, against E. A. Patterson and the sureties on his bond. It should here be stated this cause was pending for a great number of years and it became necessary, from time to time, to substitute as plaintiff each successive Probate Judge until finally the appellant was the last substitute plaintiff.

The complaint charges that E. A. Patterson, who had the official capacity with the Bank of Antreville heretofore recited, that the said guardian in violation of his trust as such, negligently deposited the guardianship funds in the Bank of Antreville, when he knew the bank was insolvent, and that he permitted the said funds to remain on deposit until it closed. It is further charged that he deposited the said trust fund without securing the approval of the Probate Court and that he failed and neglected to take any security for the said fund so deposited, and as a result of his negligent failure the minor has suffered a loss of $844.44, upon which plaintiff claims interest.

The respondents filed an answer wherein the official capacity of E. A. Patterson with the Bank of Antreville is admitted, and that in depositing the trust fund in said bank that the guardian was acting in good faith and exercised due diligence in the handling of said funds. The answer also denied any neglect of duty on the part of the guardian.

The action was pending in the Court of Common Pleas for Abbeville County from 1931 until it was finally tried

before the Honorable J. Frank Eatmon, and a jury, with a verdict resulting in favor of the defendants. It is not here necessary to recite the various motions and hearings had in the case during its pendency for trial.

The appellant made timely motions for a directed verdict and for judgment *non obstante veredicto,* all of which were refused. From such adverse rulings on said motions, this appeal is prosecuted upon seven exceptions, which pose two questions. (1) Was there error in refusing appellant's motion for a directed verdict on account of the failure of the guardian to obtain written approval from the Probate Judge for deposit of the trust fund in the Bank of Antreville? (2) Was there error in refusing appellant's motion for a directed verdict on the ground that the evidence was susceptible of no other reasonable conclusion other than that the guardian was guilty of negligence in the handling of the trust fund?

The appellant, by the first question, asserts that the guardian, under the terms of Section 5462, Vol. III, 1922 Code of Laws of South Carolina, before depositing any funds belonging to his ward in the Bank of Antreville, should have obtained the written authority or approval of the Probate Judge for such deposit, and that his neglect so to do makes both him and his sureties liable for the funds lost by the failure of the bank.

This Code section is in the following language:

"That any guardian, committee, trustee, executor, administrator or other person or corporation chargeable with interest on funds in hand belonging to either ward or other person or corporation be, and he or it or they are hereby, authorized and empowered to invest same in bonds of the State of South Carolina, or some political division thereof, or in bonds of the United States, *or to deposit same in some savings bank, such investment or deposit, however, to be first approved by the Court having jurisdiction of such fund,* and in his account he shall not

be chargeable at a greater rate of interest than such fund so earns." (Emphasis added.)

Under the provision of the aforesaid section, it is clear that the guardian in this case, before making the deposit of the funds in his hands should have secured the written approval of the Probate Court. Has the appellant shown that the deposit of the fund in his hands was made without the approval of the Probate Court? The only proof of this fact was the introduction into evidence of the Probate record in this case. There was no order of approval in the record. The appellant testified that he had no personal knowledge as to whether or not the roll contains everything that was originally in it. His entire knowledge was based upon the contents of the Judgment Roll in the Probate Court. The burden was upon the appellant to show affirmatively that no such order was ever made. It must be kept in mind that the guardian was appointed in 1928 and this case was tried some twenty-five years later. There is a presumption that where in a court of general jurisdiction the record is silent, the proceedings are presumed to be regular and this presumption applies also to Courts of Probate and especially after a long lapse of time. *Clark v. Neves,* 76 S. C. 484, 57 S. E. 614, 12 L. R. A., N.S., 298; *Bagwell v. Hinton,* 205 S. C. 377, 32 S. E. (2d) 147.

In the case of *Fouche v. Royal Indemnity Co. of New York,* 217 S. C. 147, 60 S. E. (2d) 73, 75, this court said:

" 'When it appears affirmatively on the face of the record that an infant has not been served with summons, the infant is not bound by the proceedings. *Bailey v. Bailey,* 41 S. C. 337, 19 S. E. 669, 728, 44 Am. St. Rep. 713. If the record is silent as to such jurisdictional matters with respect to a court of general jurisdiction, it will be presumed that what ought to have been done was done; but, when the record discloses the manner in which service on an infant was attempted to be made, there is no presumption that they were served in any other way. *Rice v. Bamberg,* 59 S. C. [498] 505, 38 S. E. 209. The rule which applies as to courts

of general jurisdiction applies also to the court of probate. *Thomas v. Poole,* 19 S. C. 323; *Turner v. Malone,* 24 S. C. 398; *Hendrix v. Holden,* 58 S. C. 495, 527, 36 S. E. 1010 * * *

" 'In view of the long lapse of time, the possibility that portions of the record may have been lost or misplaced, and the presumptions that must be indulged wherever the record is silent, we must hold that plaintiffs were parties to the proceedings in the probate court, and were thereby divested of all their interest in the premises. Under this view the circuit court erred in not directing a verdict for defendant and dismissing the complaint in each of the cases.' "

And again from the *Fouche case:*

"In our opinion, the want of jurisdiction of the appellants does not affirmatively appear on the face of the record in the probate court. The mere absence from the judgment roll of certain papers which ought to have been made a part of it, and which, if included, would affirmatively show that jurisdiction had been acquired, is not enough to make it affirmatively appear from the face of the record that the court had no jurisdiction of the parties."

We, therefore, conclude that the appellant by showing the mere absence from the judgment roll of an order approving the Bank of Antreville as a depository of the funds in the hands of the guardian was not enough to overcome the presumption that the proceedings in the Probate Court were regular in this particular.

The appellant, by the second question, asserts that the Trial Judge should have directed a verdict for the appellant on the ground that the evidence showed that the guardian was guilty of negligence in the handling of the trust fund.

In the case of *Epworth Orphanage v. Long,* 207 S. C. 384, 36 S. E. (2d) 37, 42, this court said:

" 'The general rule in reference to the accountability of trustees is that they shall use such diligence in the manage-

ment of the trust fund as a prudent man would do in relation to his own affairs, and that they shall not be charged with loss except for neglect of duty. *Turnipseed v. Sirrine,* 60 S. C. 272, 38 S. E. 423.' *Oakes' Estate v. Oakes,* 170 S. C. 167, 169 S. E. 890, 891; *International Shoe Co. v. U. S. Fidelity & Guaranty Co.,* 186 S. C. 271, 195 S. E. 546. In the application of this well established rule it is generally held that if a trustee or other fiduciary in good faith deposits funds of the estate in a bank of good repute and standing and nothing occurs to indicate that the affairs of the bank are in such condition as would lead a reasonably prudent man to withdraw the funds, he is not liable for any loss which may occur through the subsequent failure of the bank; the test being whether he has exercised such care as men of common prudence ordinarily exercise in their own affairs. Such a fiduciary is not regarded as an insurer, but he is responsible for any such loss where he deposits such funds, or allows them to remain on deposit, when the bank is not in a sound financial condition and this fact is known to him or might have been known by the exercise of ordinary prudence and diligence. *Twitty v. Houser,* 7 S. C. 153; 21 Am. Jur., p. 533; Annotation 60 A. L. R. 488."

As is heretofore stated, E. A. Patterson was a majority stockholder and was president, cashier, general manager and a director of the Bank of Antreville, in which the guardian deposited the funds of his ward. The record shows that at the time of the closing of the Bank of Antreville that it had cash on hand of $109.42, gold coin of $10.00 and silver coin of $17.23. It also appears from the report of the Bank Examiner that the bank's cash was practically exhausted and no immediate collections could be perfected on any of the receivables to clear daily items. The directors, of whom E. A. Patterson was one, signed a resolution placing the bank in the hands of the State Bank Examiner. No other conclusion can be reached than that the bank was hopelessly insolvent, could not meet its obligations nor pay

cashier's checks in the amount of $2,602.01, which were outstanding. The record shows that E. A. Patterson had been cashier of the bank for nine years prior to its closing. He admitted that in December, 1930, before the bank closed, that he gave a mortgage on his home and placed $2,500.00 in the bank and his explanation is that "I was trying to save the bank". He admitted that he borrowed money from various individuals and put up collateral of the bank in order to obtain funds for the bank. In order to obtain the deposit of Anderson Fertilizer Company in the amount of $477.13 collateral was put up by E. A. Patterson. He states that he put up such collateral in order to get the deposit. He admitted that these people would not have placed their money on deposit without security. He even went to the extent of soliciting a deposit from one S. L. Shirley in the amount of $2,000.00 and gave him security for such. The record also shows that E. A. Patterson was indicted in Federal Court and charged with a violation of the federal law in that he did not make prompt remittance of post office funds. He plead guilty to an indictment charging that he did willfully transfer, convert, appropriate and apply for a purpose or purposes not prescribed by law, to his own use and benefit certain postal funds. We can only conclude from this evidence that E. A. Patterson was guilty of negligence in permitting the trust fund in his hand to remain on deposit when the Bank of Antreville was not in a sound financial condition and this fact was known to him. The conclusion is inescapable that Patterson was negligent in allowing the funds to remain on deposit and in making no effort to protect them at a time when his duty to his ward required him to exercise that degree of care which a person of common prudence would exercise. Patterson did not occupy the position of an outsider. Due to the fact of his official connection with the bank he had the opportunity and is charged with knowing of its condition and should be held to a stricter responsibility than one who did not have such an opportunity. In addition to the foregoing, E. A.

Patterson stated in his testimony that the bank got in bad shape during the last year of its operation. He admitted that he had only $2.65 on deposit in the bank. The record also shows that the bank paid a liquidating dividend of 3.6 per cent.

In the case of *In re Filardo,* 221 Wis. 589, 267 N. W. 312, 105 A. L. R. 438, the Wisconsin Supreme Court held that the chief executive officer of a bank, because of his official connection with the bank, is charged as a matter of law with knowledge of its financial condition. E. A. Patterson, because of his official connection with the Bank of Antreville is charged with knowledge of what its financial condition was. The only reasonable conclusion to be drawn from all the testimony is that he knew that the Bank of Antreville was not in a sound financial condition and it therefore became his duty, under the circumstances, to protect the trust fund which he had deposited in the bank, by either taking security therefor or by withdrawing the funds from deposit. It is true that he was in a difficult position as usually is the case where one represents conflicting interests. He had the official connection with the bank heretofore stated and also was guardian of a trust fund.

We again quote very appropriate language to the present situation from the opinion of the Court in *Epworth Orphanage v. Long, supra.*

"Long was in a difficult position, as is usually the case where one represents conflicting interests. He was a director of the bank, a stockholder owning $5,000.00 of stock in the bank, and a trustee of the Holmes trust, which probably had the largest unsecured deposit in the bank. As a director it was his duty to preserve the assets of the bank for the equal benefit of all the depositors and other creditors. The performance of this duty might require the prompt closing of the bank or its continuance as long as possible as a going concern. His interest as a stockholder strongly suggested that the bank be kept going in order that he might avoid the

statutory liability and might eventually retrieve his stock investment. As trustee of the Holmes trust it was his duty to protect the trust fund. If its withdrawal from the bank was necessary for its preservation, it was his duty to withdraw it regardless of the effect such withdrawal might have on the bank or on his interest in the bank. If the trust fund could not be withdrawn, it was his duty to do the next best thing for the protection of the fund, whatever effect his action may have had on the bank, on himself, or on others interested in the bank.

"The difficulty and embarrassment in the situation due to the conflict of interests was brought about by Long's voluntary acts, and therefore he cannot complain if he is held to the standard of conduct uniformly required of trustees. The law does not recognize the right of a trustee to escape or minimize his obligation by putting himself in a position where his obligation to one trust conflicts with his obligation to another trust or with his personal interests. As was said in *Covey v. Pierce,* 229 Mo. App. 424, 82 S. W. (2d) 592, 599, in holding trustees liable under similar circumstances, 'they accepted the trust fund and the care of it, to be managed in accordance with the mandates of equity and the law; and, in accordance with such mandates, they are required to administer it.'

"In *Anderson v. Aetna Casualty & Surety Co.,* 175 S. C. 254, 178 S. E. 819, 824, a bank receiver deposited receivership funds in the Peoples State Bank of South Carolina which thereafter failed. It appeared that the receiver was a former cashier of the local branch of the bank in which the funds were deposited and was also a stockholder. The Court stated that the information which ordinary diligence would have disclosed 'must have suggested to a person of ordinary care and prudence that the deposit be withdrawn from the bank', and the receiver was held personally liable for the loss sustained. We think the following observation of the Court in that case is applicable to the executor Long here: 'It strains credulity to suggest that he had no inkling

of the affairs of the bank in time to withdraw the receivership funds before the crash of the bank.'

"It may well be that an individual, from a sense of community pride and reluctance to prefer himself over his neighbors, might under the circumstances of this case have chosen to incur the risk of loss rather than withdraw his deposit and thereby contribute to the further embarrassment of the bank; but however praiseworthy such motives may be, a trustee is not at liberty to make such a contribution for his *cestui que* trust."

We, therefore, conclude that the appellant's motion for a directed verdict in his favor should have been granted for the reason that the only inference that can be drawn from the entire record is that the guardian was guilty of negligence in the handling of his ward's estate.

The defendants made appropriate motions for a nonsuit and directed verdict on the ground of laches and unreasonable delay in bringing this case to trial. They assert an additional ground that the guardian had been discharged by proper order of the Probate Court. The motions were refused by the Trial Judge. There was no appeal therefrom and the rulings of the Trial Judge have become the law of the case. *Wilson v. Dove,* 118 S. C. 256, 110 S. E. 390; *Hinson v. Roof,* 128 S. C. 470, 122 S. E. 488; *Prather v. Clover Spinning Mills, Inc.,* 215 S. C. 103, 54 S. E. (2d) 529.

The Trial Judge instructed the jury that in the event a verdict was found for the plaintiff, the amount thereof would be the sum of $844.44, with interest at seven per cent from January 1, 1929. There was no exception to this charge on the part of any of the parties and this has become the law of the case.

Having reached the conclusion that the appellant was entitled to a directed verdict, it becomes our duty to reverse the judgment appealed from and to remand the case to the Circuit Court with directions to enter judgment for the

plaintiff for the sum of $844.44, with interest at seven per cent from January 1, 1929.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.