<hr/>

13242

IN RE: WILLCOX
ELLIS ESTATE v. BROWN *ET AL.*

(160 S. E., 260)

*Messrs. J. C. Willcox* and *A. McC. Faucette,* for appellant,

*Messrs. Sam J. Royall* and *W. Marshall Bridges,* for respondent,

September 14, 1931.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

The petitioner, J. C. Willcox, Esq., regional attorney of the United States Veterans' Bureau, filed a petition in the Court of Probate for Florence County, wherein he prayed that Gedney M. Brown be required to make a full and complete accounting of his guardianship of the estate of Mary Ellis, a minor, that the guardian and his surety, American Surety Company, be held liable for the sum of $2,106.16, alleged to have been lost to the minor's estate on account of deposits made by the guardian in the Bank of Florence, and that Brown be removed from the guardianship.

The guardian, Brown, and the surety filed separate returns to the petition. The positions taken by them, however, were practically the same. They denied liability for the loss to the ward's estate claimed by the petitioner, alleged that

Brown, as guardian, had faithfully performed his trusts, and that there was no justifiable cause for his removal. But Brown asked that he be allowed to make final accounting of the guardianship, and that he be relieved therefrom.

The Probate Judge, J. R. Lawrence, Esq., denied the petition of the petitioner, approved Brown's accounting as guardian, and ordered that, upon his delivering to the Court all funds and evidences of indebtedness in his hands as guardian, he be formally discharged from the trust, and that he and his surety be released from liability on the bond theretofore executed.

The petitioner appealed from the order of the Probate Judge to the Court of Common Pleas, but the late Honorable John S. Wilson, the presiding Judge, agreed with the main conclusions of the lower Court and affirmed its order.

From the order of Judge Wilson, the petitioner has appealed to this Court.

A brief statement of the facts necessary to be here considered, as disclosed from the petition of the petitioner, the returns of the respondents, and the orders of the Probate Judge and Circuit Judge, respectively, is as follows:

Mary Ellis, a minor, is the daughter of a deceased World War veteran and a beneficiary of the United States Veterans' Bureau. On September 18, 1918, Brown, appointed to the office by the Probate Judge of Florence County, duly qualified as the guardian of the minor's estate, and since that time he has been acting in such capacity. American Surety Company became surety on the guardian's bond. The estate of the minor apparently was limited to the funds received by her through the Veterans' Bureau. These funds were paid to the guardian at the rate of $48.75 per month. The guardian deposited the funds regularly as they were received in the savings department of the Bank of Florence. From the moneys coming into his hands, the guardian frequently made necessary expenditures for the proper maintenance, care, and support of his ward. From time to time, as opportunity

presented, when sufficient funds had been accumulated, the guardian invested some of the funds in first mortgages of real estate. Because there was much uncertainty as to the expenditures necessary for the ward's maintenance, and on account of the fluctuation in real estate values in the community, and the hazards surrounding such securities, the guardian deemed it inadvisable to place more of the funds in his hands in such investments.

For many years, the Bank of Florence was regarded by the public generally as a safe banking institution. It was a depository for public funds, national, state, and county. It was compelled to close its doors on October 25, 1928. At the time it ceased to operate, Brown, as guardian, had on deposit in its savings department $2,106.16.

The guardian made the regular annual returns to the Probate Court, required of him by the law, copies of which were sent to the Veterans' Bureau. These returns showed correctly the amounts in bank to the credit of the guardian and where they were deposited. The accountings of the guardian were regularly and formally approved in writing by the Probate Judge.

The record does not contain any charge or intimation of any wrongdoing on the part of the guardian. Neither is there anything to indicate that Brown at any time had any knowledge or information that the Bank of Florence was insolvent, nor that he was negligent in ascertaining before it closed as to its weakened financial condition.

The position taken by the petitioner in both the Probate and Circuit Courts, and the one upon which he rests his appeal to this Court, was that the guardian, under the terms of Section 5462, Volume 3, Code of 1922, before depositing any funds belonging to the estate of his ward in the Bank of Florence, should have obtained the written authority or approval of the Probate Judge for such deposits, and that his neglect so to do makes both him and his surety liable for the moneys lost by the failure of the bank.

The Probate Judge held that the cited section of the Code was not applicable, for the reason that its language has reference to the rate of interest chargeable to a guardian on funds in his hands, and its terms do not make a guardian liable for funds lost on deposit in a bank which subsequently fails. Conceding the section to be applicable, however, he further held that the guardian had substantially fully complied with its requirements, since the repeated written approvals by the Probate Judge of his accountings approved the deposits in the bank reported in such accountings.

The distinguished presiding Judge of the Court of Common Pleas disagreed with the Probate Judge as to the inapplicability of the statute. He held that it was applicable, but concluded from all the circumstances, and particularly because of the continued written approvals of the guardian's accountings by the Probate Judge, that the provisions of the statute had been met and that the guardian and surety were not liable for the losses incurred by the bank's failure.

The Code section to be considered is in the following language: "That any guardian, committee, trustee, executor, administrator or. other person or corporation chargeable with interest on funds in hand belonging to either ward or other person or corporation be, and he or it or they are hereby, authorized and empowered to invest same in bonds of the State of South Carolina, or some political division thereof, or in bonds of the United States, or to deposit same in some savings bank, such investment or deposit, however, to be first approved by the Court having jurisdiction of such fund, and in his account he shall not be chargeable at a greater rate of interest than such fund so earns."

When we regard the history of the Act of March 12, 1920 (31 Stat., 899), from which the section came, and look into the probable intention of the Legislature in its enactment, and consider in that connection other recent legislation, touching the same subject generally, we have to admit that

the Probate Judge had plausible reasons for his holding to the effect that the main purpose of the statute was to regulate the rate of interest chargeable to fiduciaries. Prior to the passage of the Act of 1920, fiduciaries, chargeable with interest on funds in their hands, when the rate of interest was not otherwise specifically provided for, were required to account for interest at the legal rate of 7 per cent. per annum. Being chargeable with that legal rate of interest, they could but in few instances invest funds in their hands in bonds of the United States or of the State, or any of its political subdivisions, or any savings bank deposits, for the reason that investments of those characters rarely produced interest of 7 per cent. per annum. Any investment by a fiduciary of those kinds resulted generally in loss to the fiduciary, since he had to pay more interest on the investment than he received therefrom. Yet such investments were highly regarded, and were often much more safe than investments in real estate mortgages, stocks in corporations, and other investments which a fiduciary might have found. The Act of 1920 permitted investments in bonds of the United States, of this State and its political divisions, and deposits in some savings bank, and expressly relieved fiduciaries making such investments or deposits from payment of interest at a greater rate than that which he received from the investment or deposit. It was provided, however, that such investments or deposits should first be approved by the Court having jurisdiction of the funds in the hands of the fiduciary.

The wording of the statute is just a little confusing in one respect. A hasty reading would indicate that the interest on the funds, and not the funds, could be invested in the bonds and savings bank accounts referred to. Viewing, however, one main purpose of the enactment, to relieve fiduciaries of loss, resulting from the former law as to the rate of interest they had to pay, regardless of the amount they received from investments, we think a fair construction of the language,

even if the English was expressed somewhat badly, would demand that the meaning be construed to refer to investments of the funds in the hands of fiduciaries as well as the interest on such funds. This certainly, we think, was the legislative intent.

Under the wording of Section 5462, while its provisions were of force, we think it is clear that the guardian in this case, before making any of the investments or deposits authorized by its terms, should have secured the. written approval of the Probate Court. That Court is a Court of record, and its orders, decrees, etc., should be in writing and properly entered of record. Sections 164 and 165 of Vol. 1, Code of 1922; Rule 1 of the Rules of the Probate Court. See, also, *Turner v. Malone,* 24 S. C., 398; *Thomas v. Poole,* 19 S. C., 323.

It is our opinion, however, that the order of the Circuit Judge, affirming the order of the Probate Court, in this cause, should, for very good reasons, be affirmed. The guardian here was appointed to his trust and entered upon his duties on September 18, 1918, about eighteen months prior to the adoption of the Act of 1920, now Section 5462 of Volume 3, Code of 1922. We have not been cited to any law prior to the enactment of that legislation which required the guardian to obtain any kind of approval, either written or verbal, from the Probate Court, authorizing him to deposit the funds received by him for the ward's estate in the Bank of Florence or any other bank. Before that law went into effect the guardian was subject. to the general rule of the law that he was "authorized to do any act for the infant which a prudent man in the management of his own business would do." *Capehart v. Huey,* 1 Hill, Eq. (10 S. C. Eq.), 405; *Poole v. Bradham,* 143 S. C., 156, 141 S. E., 267.

Certainly, therefore, since there was no legal requirement that the guardian had to obtain the written approval of the Probate Judge before he could make his

deposits in the savings department of the Bank of Florence, he was required only when making such deposits to be properly watchful of the best interest of his ward and not to be negligent thereabout; and, since the record shows that the guardian faithfully performed the duties required of him, he was not chargeable with losses sustained because of the deposits he made in the Bank of Florence prior to the Act of 1920. If the guardian was not liable, then logically his surety was not liable either.

The deposits made by the guardian in the savings department of the bank after the Act of 1920 became effective stand on a basis different from the deposits made prior to the enactment of that statute. As to the deposits made after the 1920 Act took effect, there should have been obtained by the guardian the approval of the Probate Court. Still, it is our opinion that the Probate Judge and the Circuit Judge correctly held that as to those deposits there had been such compliance with the terms of Section 5462 on the part of the guardian as to justify the conclusions reached in both the lower Courts that the guardian and his surety were not liable for the losses incurred by the failure of the bank. The deposits made prior to the Act of 1920 had been approved in writing by the Probate Judge. He not only had full knowledge that the guardian was depositing the funds in the Bank of Florence, but, by a written order, he approved those deposits. If the Probate Court had failed to sanction the deposits already made in the bank, then the guardian would have been put on notice that future deposits in that bank would not have received the Court's approval. The order, approving the past deposits, when there was nothing whatever appearing to the guardian or to the Probate Judge to make them, or either of them, have reason to believe that the funds were in danger of loss, was entire justification for the guardian to continue depositing the money in the same bank. Undoubtedly, under the circumstances, if attention to the Act of 1920 had been called to

the Probate Judge, he would have passed the necessary order approving future deposits in the bank.

This Court will, as it should, extend its hand at all times to aid in giving proper protection to a ward whose estate has been wrongfully, recklessly, or negligently dissipated by an unfaithful guardian. But when it clearly appears, as it does in the instant case, that a guardian, with little remuneration for his arduous services, has sought as best he could to be faithful to the trust imposed upon him, the Court feels inclined not to hold him too strictly to any technical requirement of the law. Especially should this be the case when the Probate Judge, charged with the duty of overseeing the faithful administration of minors' estates on the part of their guardians, with no intention to do otherwise than protect such estates, has not sufficiently guided the guardians in the technical performance of their duties.

In connection with Section 5462, Volume 3, Code of 1922, we call attention to the fact that the General Assembly, at its session of 1929, passed another Act regulating investments of funds held by guardians and other fiduciaries (36 Stat., 143). This law, in some respects, changed the provisions of the Code section mentioned. It tends, however, as incidentally mentioned above, to confirm our view that it is proper for a guardian, before depositing funds of his ward in a savings bank, to secure the approval of the Probate Court having jurisdiction of the ward's estate. The Act, concededly, has no bearing upon this cause, since the matters involved here occurred before its passage.

In argument of respondents' counsel, it is suggested that the petitioner had no right to bring this proceeding; that the proper course would have been a suit instituted in the name of the ward by her guardian *ad litem*. Because of the views we hold, as heretofore expressed, it is not deemed necessary to discuss or pass upon this suggestion. In fact, the question is not properly raised, since there was no appeal on the part of the respondents, and, in-

deed, the matters seem not to have been passed upon by either the Probate Judge or the Circuit Judge. Concerning the right of the petitioner, however, to institute the proceeding, a question not now before us, we invite attention to Act No. 234, approved March 4, 1929 (36 Stat., 262), relating to the guardianship of incompetent veterans and minor children of disabled or deceased veterans.

It is the judgment of this Court that the order appealed from be, and the same is hereby, affirmed.

MESSRS. JUSTICES COTHRAN, STABLER, CARTER and BONHAM concur.