13656

*IN RE* WILLCOX
OAKES' ESTATE v. OAKES *ET AL.*

(169 S. E., 890)

*Messrs. J. C. Willcox, A. McC. Faucette* and *M. L. Mc-Hugh,* for appellant,

*Messrs. Dargan & Paulling,* for respondent, Standard Accident Ins. Co. of Detroit Mich.,

*Mr. Geo. H. Edwards,* for other respondent.

July 1, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

On April 15, 1927, the respondent W. J. Oakes was duly appointed in the Probate Court of Darlington County, committee of Francis J. Oakes, an incompetent World War veteran, and the respondent Standard Accident Insurance

Company of Detroit, Mich., became surety on the bond of the committee.

At some time, the date not appearing in the record, the petitioner, J. C. Willcox, regional attorney of the United States Veterans' Bureau, petitioned the Probate Court for the removal of W. J. Oakes as the committee of Francis J. Oakes, that the committee be required to make a full and complete accounting, and that the committee and his surety be held liable and accountable for certain sums of money of the estate of the incompetent deposited by the committee in two banks in the City of Darlington, which had become insolvent after the deposits therein had been made. The petition was based upon the allegation that the committee had made the deposits in the banks without the same having been approved by the Court having jurisdiction of such funds, the Probate Court of 'Darlington County, as required by the Act of March 12, 1920 (21 St. at Large, 899), Section 5462, Vol. 3, Code of 1922, now Section 9050, 1932 Code.

The committee and the surety, by answers filed to the petition, resisted the discharge of the committee, the accounting asked for, and the claimed liability of the committee and the surety for the losses incurred to the estate of the incompetent on account of the deposits in the insolvent banks. Both the committee and the surety admitted losses to the estate of the incompetent by reason of the deposits made in the banks, but denied any violation of the statutory provisions by the committee.

The Judge of Probate, on August 27, 1931, made his order refusing the petition. From the order, we find that he held a hearing in the cause and took evidence therein. The evidence has not been reported. The transcript of record contains only a short statement as to the purpose of the proceeding, the petition of the petitioner, the answers of the two respondents, the order of the Judge of Probate, the exceptions of the petitioner to that. order on appeal to the Circuit Court, the decree of the Circuit Judge, which simply

confirmed the order of the Judge of Probate "for the reasons therein stated," and the exceptions to this Court from the Circuit Judge's decree.

The brief of the petitioner-appellant states many matters of fact which it is contended were adduced at the hearing in the Probate Court, but, since a number of these do not appear in the transcript of record, we, of course, cannot consider them. The only facts we can consider are those alleged in the petition and admitted in the answers, and such facts as were reported by the Judge of Probate in his order. And unfortunately for a correct and complete decision in this Court, as we view the law applicable to the cause, we have not in the record sufficient facts upon which we may base at this time a final determination of the case.

Without stating in detail the several exceptions, we take up first the law which we consider applicable to the questions involved.

The Act of 1920, now contained in Section 9050 of the Code, has been construed in only one case before this Court, so far as we are advised, that of *In re Willcox* (*Ellis' Estate v. Brown*), 162 S. C., 133, 160 S. E., 260, 262, which we shall refer to as the *Ellis case.* Counsel for both the appellant and the respondents cite that decision, and the appellant rests his position mainly upon some holdings there made.

In the *Ellis case,* we affirmed the conclusion of the Judge of Probate, approved by the Circuit Judge, that the guardian of a ward, under the circumstances of that case, was not liable for funds of the ward's estate lost in a bank which became insolvent after the deposits had been made, although there had not been, before the deposits were made, formal approval by the Judge of Probate of the deposits. An important fact developed in the *Ellis case* to be kept in mind is this, the guardian began making the deposits in the bank some eighteen months prior to the enactment of the law now contained in Section 9050 of the Code, first enacted in 1920.

Other facts, also of great importance, were that the guardian from the very beginning, until the proceeding was had in the Probate Court, had complied at all times with the law in making his returns, which returns showed the bank deposits and were approved by the Judge of Probate.

In the *Ellis case,* we said: "Under the wording of Section 5462 [Section 9050, 1932 Code], while its provisions were of force, we think it is clear that the guardian in this case, before making any of the investments or deposits authorized by its terms, should have secured the written approval of the Probate Court. That Court is a Court of Record, and its orders, decrees, etc., should be in writing and properly entered of record. Sections 164 and 165 of Vol. 1, Code of 1922; Rule 1 of the Rules of the Probate Court. See, also, *Turner v. Malone,* 24 S. C., 398; *Thomas v. Poole,* 19 S. C., 323."

We also said: "The deposits made by the guardian in the savings department of the bank after the Act of 1920 became effective stand on a basis different from the deposits made prior to the enactment of that statute. As to the deposits made after the 1920 Act took effect there should have been obtained by the guardian the approval of the Probate Court. Still, it is our opinion that the Probate Judge and the Circuit Judge correctly held that as to those deposits there had been such compliance with the terms of Section 5462 on the part of the guardian as to justify the conclusions reached in both the lower Courts that the guardian and his surety were not liable for the losses incurred by the failure of the bank. The deposits made prior to the Act of 1920 had been approved in writing by the Probate Judge. He not only had full knowledge that the guardian was depositing the funds in the Bank of Florence, but, by a written order, he approved those deposits. If the Probate Court had failed to sanction the deposits already made in the bank, then the guardian would have been put on notice that future deposits in that bank would not have received the Court's

approval. The order, approving the past deposits, when there was nothing whatever appearing to the guardian or to the Probate Judge to make them, or either of them, have reason to believe that the funds were in danger of loss, was entire justification for the guardian to continue depositing the money in the same bank."

The terms of the Act of 1920, Section 9050 of the present Code, are equally applicable to committees of persons *non compos mentis* and guardians of the estates of infants. That law had not been enacted when the guardian in the *Ellis case* was appointed, so there was no violation of law for the guardian in that case to make the bank deposits without first obtaining authority so to do from the Probate Court. But the law had been in full force for something like seven years when the committee in the case at bar was appointed. It was the duty of the committee, under its provisions, before depositing any funds of the estate of the incompetent coming into his hands in any savings bank at interest, to obtain first from the Probate Court of Darlington County the approval of the making by him of such deposits. It is clear when the committee made deposits in the banks without obtaining the approval of the probate Court he violated the provisions of the statute.

In the argument for the respondents here, attention is called to previous holdings of this Court that the general rule in reference to the accountability of trustees is that they shall use such diligence in the management of the trust fund as a prudent man would do in relation to his own affairs, and that they shall not be charged with loss except for neglect of duty. *Turnipseed v. Sirrine,* 60 S. C., 272, 38 S. E., 423.

We accept that rule now, and recognize it in the *Ellis case,* except when the general rule has been changed by legislative authority. In the *Ellis case,* we said that such was the general rule, "before that law (the Act of 1920) went into effect."

Perhaps even under the general rule, relied upon by the respondents, the committee in this case was chargeable for some of the losses occurring to the estate in his charge on the ground of "neglect of duty," since he neglected to obtain the approval of the Judge of Probate to the deposits he made.

Since there was a violation of his duty, as required by the statute, on the part of the committee, he is liable for any losses occurring to the estate of the incompetent growing out of the bank deposits which were not approved by the Court.

"Where a statute requires the guardian to apply to and obtain the authority of the Court before making an investment the guardian is liable for a loss, if he makes the investment without proper authority, and good faith and care and prudence will not protect him." 28 C. J., 1140.

But it appears from the order of the Judge of Probate, and from that alone we get the facts, that the committee filed the annual returns required of him by the statutes, "containing itemized statements of all his receipts and disbursements and showing deposits in said banks and the amounts thereof and that his said reports were all accepted by the Judge of Probate without objection and that all except the first were approved in writing by endorsement of the Judge of Probate thereon. * * * "

As will be seen from the language we have quoted from the opinion in the *Ellis case,* we held as to the deposits made by the guardian after the Act of 1920 became effective that the law contained in that Act had been sufficiently complied with by the guardian, since, in the returns made prior to the passage of the Act, the Judge of Probate had approved the deposits by the guardian in the involved banks. Accordingly, we held the guardian was not liable for the deposits made after the Act of 1920 became the law.

Following the Ellis decision, it is our opinion, and we so hold, that the committee here is not liable for deposits made

in the banks after the approvals by the Judge of Probate of deposits being made in those institutions.

Applying the law which we think applicable, it is impossible for us to say, in the state of the record submitted to the Court, what is the liability of the committee to the estate, since it does not appear what deposits were made prior to the approval given by the Judge of Probate, and what deposits were made after such approval. Neither does the record show the withdrawals from the deposits for the maintenance, care, and support of the incompetent prior to the time the approval of the deposits was first given by the Judge of Probate, and what the withdrawals for proper purposes were after the first approval of the deposits was made. The final determination of the cause must depend upon a correct statement of the accounts in the two different periods. It is necessary, therefore, for the case to be remanded to the Probate Court that the proper sum due by the committee may be ascertained. The surety, of course, is responsible for any liability of the committee.

We are not prepared either at this time to finally determine whether or not the committee should be removed, as requested by the petitioner. The Judge of Probate found that the committee had administered his trust with unusual care and fidelity. The committee, who we understand is a brother of the incompetent, has not even charged the commissions to which he was entitled under the law. He did one improper thing, however, loaned to himself some of the funds belonging to the estate. This the Probate Judge frankly says was done upon his "oral consent," and that the money so borrowed had been repaid promptly with interest at the rate of 8 per cent. per annum thereon, although the committee could only have been required to pay 7 per cent. The Judge of Probate pointed to this loan to himself by the committee, and the manner in which the loan was repaid, as an evidence of the committee's sincerity and good faith. The Judge of Probate, however, overlooked the law that a

trustee should not borrow for his own use funds of a trust estate. All that was done, so the Probate Judge very frankly says in his report, was done with his approval. In the petition asking the removal of the committee, the loan mentioned was not stated as a ground for removal. It appears, too, in all probability, the committee did not know of the provisions of the statute of 1920, and was not informed that he should obtain approval by the Court of the deposits he was making. While legally liable to the extent we have before indicated for the losses occurring to the estate, it does not appear that the committee has acted at any time with bad faith. If he responds properly and within a reasonable time to the judgment of the Court as to the losses to the estate in his charge, it may be proper for the Court to continue him in the capacity of committee. At this time, we prefer to leave the question of his removal to the Probate Court, subject, of course, to the right of appeal to the Circuit Court from any order of the Probate Court, and to the right of appeal to this Court from any order of the Circuit Court.

We think it not out of place to call attention to the fact that there may be some confusion in the meanings of Sections 9049, 9050, and 9051 of the 1932 Code, relating to investments by guardians, committees, trustees, executors, administrators, and other fiduciaries, on account of the incorporation in the present Code of several Acts pertaining to that subject. The Code Commission evidently did not feel justified in eliminating either of the Acts. Particularly is there confusion in Sections 9050 and 9051. In the first of these, there is a provision that not only deposits in savings bank, but the investments to be made are to be approved by the Court. In the last section, while deposits in banks are still to be approved by the Court, the approval of other investments seems not to be required. In Sections 9049 and 9050, the fiduciary is not to be charged with a greater rate of interest than the amount he actually receives on the invest-

ments. This provision, with the exception as to bank deposits, is not contained in Section 9051, which section was taken from the last Act on the subject, that of 1929. The apparent confusion does not affect the case at bar, but in a matter so important as investment of funds intrusted to fiduciaries the law ought to be plain.

The judgment of this Court is that the decree of the Circuit Court appealed from be, and the same is hereby, reversed, and that the cause be remanded to that Court with instructions that it be remanded to the Probate Court of Darlington County for such further action and orders as shall be necessary to carry into effect the views herein expressed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. JUSTICE BONHAM (concurring) : I concur in the result of the opinion of the Chief Justice in this case, but I desire to emphasize my view of one phase of the main question involved in the appeal.

It is possible, indeed probable, that the opinion of this Court in the case of *In Re Willcox (Ellis' Estate v. Brown)*, 162 S. C., 133, 160 S. E., 260, may have led Judges of Probate and the fiduciaries named in Section 9050, Code 1932, to the erroneous conclusion that the approval therein required of the Judge of Probate of deposits in banks of funds in the hands of such fiduciaries might be had after, as well as before such deposits are made, and that such fiduciaries are relieved of liability for funds lost by the failure of the depository banks, by the approval of the Probate Judge obtained subsequent to the deposit. Such is not our construction of the Act of 1920 now embraced in the Code of 1932 as Section 9050. We think it is the intent of the Act that the approval be had before the deposit is made. The duty devolved upon the Judge of Probate in the premises is not a perfunctory one. He is expected to examine into and satisfy himself of the financial condition of the bank

in which it is proposed to place the estate funds; otherwise the requirement of approval by him is an idle gesture, and adds nothing to the safety and security of trust funds. If the approval may be given after the deposit is made, then it may be given after loss has occurred through the failure of the bank. Such a construction might, and probably would, lead to abuse.

The approval of the deposits in the present case was made in accordance with the apparent intent of the opinion of this Court in the *Ellis case, supra,* and is therefore affirmed. But the Court deems it an opportune time to notify Judges of Probate and the classes of fiduciaries named in Section 9050 that its construction of that section is that the approval of Judges of Probate therein required must be obtained before deposits of funds are made; if not so had, and loss ensues through the failure of the bank, fiduciaries will be liable.

Appellant by Exception 2 charges error to the Probate Judge and the Circuit Judge for that they hold that the appellant made no objection to, nor criticism of, the action of the committee of the person *non compos mentis,* in depositing the funds of the estate in banks without having obtained the prior approval of the Judge of Probate; whereas the evidence shows that the appellant did object, by letters and verbally.

Unfortunately for appellant's contention, the evidence does not appear in the transcript of record upon which the case is submitted to the Court, and it is the settled rule of this Court that statements of facts which do not appear in the record may not be considered.

Mr. Justice Stabler concurs.