14621

INTERNATIONAL SHOE CO. *ET AL.* v. U. S. FIDELITY & GUARANTY CO.

(195 S. E., 546)

May, 1937.

*Messrs. Wolfe & Fort, Dobson & Dobson, G. W. Speer, H. R. Swink, Perrin & Tinsley* and *Horace L. Bomar,* for appellants-respondents,

*Messrs. Carlisle, Brown & Carlisle,* for U. S. F. & G. Co. respondent-appellant-petitioner,

February 24, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

For convenience, we shall speak of·the appellants-respondents as plaintiffs, and of the respondent-appellant as defendant.

W. B. Caldwell was a merchant operating a chain of stores, four in number, at Gaffney, Blacksburg, and Chesnee. In the evil days of the depression he became indebted to a number of creditors, whose claims he could not pay. In September, 1932, Junie Smith, a creditor of W. B. Caldwell, brought action for the collection of his debt. September 26, 1932, Hon. T. S. Sease, Judge of the Seventh Circuit, on motion of Junie Smith, appointed Miss Susie Buckner Receiver of the property and assets of W. B. Caldwell. We may say that Miss Buckner married and is now Mrs. Susie Buckner Perry; we shall, therefore, speak of her by her present name. Thereafter, by an order dated October 11, 1932, Judge

Sease appointed A. C. Pridmore co-Receiver with Mrs. Perry, and required each of them to enter bond in the sum of $10,000.00 This each of them did, with the defendant herein as surety.

A Referee was appointed by the Court, and numerous claims were proved, and testimony taken.

The Receivers during the year 1934 paid the general creditors three dividends of 10 per cent. each. No other dividends were paid.

Under an order of Judge Mann, the receivership was terminated November 30, 1935. Under this order the remaining assets, comprising balance of stock and fixtures, were sold and brought $100.00, and were disbursed.

The plaintiff brought its action against the defendant for the collection of claims against the Receivers for goods sold them from September 27, 1934, to December 12, 1934. The surety alone was sued; in the meantime other similar actions were begun on similar claims. The attorneys representing these various claimants and the attorneys representing the defendant entered into an agreement by which the pending actions were consolidated into one action and the matter was referred to Hon. LeRoy Moore, Master for Spartanburg County, as Referee, to hear and determine all issues of law and fact.

By order of Court, Susie Buckner Perry and A. C. Pridmore, Receivers, were made parties defendants to the consolidated action and were required to plead to the issues therein on penalty of having judgment go against them by default. A. C. Pridmore never appeared, nor pleaded to the issues; Mrs. Susie Buckner Perry appeared by her attorney, Jesse W. Boyd, Esq., who attended one reference, submitted written argument to the Special Referee, filed exceptions to the report of the Special Referee, and argued them orally before Judge Shipp.

The notice of plaintiffs of their intention to appeal from the decree of Judge Shipp was never served on Mrs. Susie Buckner Perry nor on A. C. Pridmore.

The defendant moved before Judge Sease to dismiss the appeal on the ground that by failing to serve notice of intention to appeal on the defendant, Mrs. Susie Buckner Perry, appellants thereby permitted the judgment of the Court in her favor to become final as to her, upon the grounds stated in the exceptions of United States Fidelity & Guaranty Company in its appeal from the decree of Judge Shipp.

The Master filed his report, holding the surety, the defendant, liable. The exceptions to the Master's report were heard by his Honor, Judge S. W. G. Shipp, who, in a decree filed May 7, 1937, modified the findings and conclusions of the Master, and held that the surety, the defendant, was not liable.

It is on appeal from this decree that the matter is now before this Court.

The complaint, as the basis of its claim that the surety is liable to it for its claim for the merchandise sold by it to the Receivers, is thus stated:

That the order of Judge Sease appointing the Receivers, "provided and directed among other things, that 'if conditions of trade appear to justify, the Receivers are hereby authorized and empowered to use from the proceeds of sales, sufficient funds to replenish saleable stock  *  *  *  and to file with the Referee, a report showing all monies received from sale of merchandise and paid out for replenishing stock, etc.,  *  *  *  that said Receivers shall from time to time, pay a dividend to creditors, *holding in reserve, a sufficient amount of funds to protect costs and expenses of the receivership'*."

That in accordance with the discretion thus vested in the Receivers, they purchased from plaintiff the merchandise shown by "Ex. A."

That the Receivers breached their bonds, and failed to comply with the order of Court in the particulars alleged with respect to the purchasing of merchandise, in that, they failed "to pay for said merchandise with the proceeds of sales, and neglected to conserve, or 'hold in reserve' sufficient

funds from the sales of merchandise to defray the expenses of the receivership, a part of which expenses was the replenishing of the stock with saleable merchandise, and instead, failed to apply the proceeds of sales to the payment of the obligation herein and diverted said proceeds to other purposes * * *." That the balance of funds remaining in the hands of the Receivers when the receivership was ended by order of Judge Mann "was consumed in the payment of Court costs and certain preferred claims," and the plaintiff's claim was not paid because of insufficient funds to the Receivers' credit.

That notwithstanding said order of this Court (Judge Mann's order) held the Receivers liable for the separate amounts due for merchandise purchased by them.

The answer of the defendant admitted the allegations of the complaint touching the corporate capacity of the defendant, touching the appointment of the Receivers, and their qualifying and filing of their bonds, and denied the material allegations contained in the epitomized statement set out above.

It may not be amiss to state that no suggestion is made by anyone interested in this action that the Receivers did not act in good faith in the discharge of their duties. The Special Referee found that "the testimony does not warrant the slightest criticism of the Receivers so far as honest conduct is concerned. Apparently everything they did was done in good faith." Judge Shipp concurred in this finding and there is no dissent therefrom by anyone.

Both parties appealed from Judge Shipp's decree.

The appellants appeal upon nine exceptions, which they elect to present under three heads, viz.:

1. Did the failure of the Receivers to file monthly reports of their doings, as required by the order of appointment, constitute such a breach of their bonds as to warrant a recovery by appellants against the surety?

2. Did the failure of the Receivers to hold in reserve a sufficient amount of funds from the proceeds of sales to pro-

tect costs and expenses of the receivership, including the purchase of new goods to replenish salable stock, constitute such a violation of the order of appointment and a breach of their bonds as to warrant a recovery by appellants against the surety?

3. Did the Receivers purchase goods which they knew, or had reason to know, they could not pay for and thus cause a loss or damage to plaintiffs?

The defendant appeals from the decree of Judge Shipp on several exceptions, viz.:

1. That he should have reversed the order of Judge Sease refusing to dismiss the appeal which was made on the ground that by failing to serve notice of intention to appeal on Susie Buckner Perry, the judgment of the Court in her favor became final as to her: (a) The appellants base their claim to relief on the joint liability of A. C. Pridmore and Susie Buckner Perry, as co-Receivers, therefore to release Susie Buckner Perry also releases A. C. Pridmore; (b) The United States Fidelity & Guaranty Company is sued as surety on the joint liability of Susie Buckner Perry and A. C. Pridmore, therefore to release Susie Buckner Perry will release the surety, United States Fidelity & Guaranty Company.

2. That Judge Sease erred in overruling the motion to dismiss the appeal which was based upon the ground that the proposed transcript of record did not comply with the statute law of South Carolina and the rules of the Supreme Court regulating appeals, (a) because it was in skeleton form; (b) it disregards Section 3 of Rule 4 of the Supreme Court, which requires that pleadings, orders, judgments, charges, and exhibits must not be set out in full unless it be necessary to a proper construction of them, and only when that is desired; (c) the proposed transcript of record violates Section 4 of Rule 4 of the Supreme Court, which relates to printing the testimony in question and answer form; (d) the proposed transcript disregards Section 7 of Rule 4, which re-

quires that the pages and lines of the proposed transcript of record be numbered consecutively.

3. That Judge Sease erred in holding that Susie Buckner Perry was without status in the matter of appeal, the error being that she had appeared by her attorney and had filed and had been heard on exceptions to the report of the Special Referee, and that the judgment in her favor could not be reversed on appeal without notice to her and opportunity to be heard.

The defendant renewed in this Court the motion to dismiss the appeal on the above-stated grounds.

The Special Referee decided that Receivers and their surety were liable because the Receivers breached their bonds in that they failed to observe the orders of the Court; in the first place, they failed to make monthly reports to the Referee; in the second place, the proceeds of sales of stock purchased to replenish stock were not conserved and applied to the payment for stock so purchased.

Judge Shipp, hearing the case on exceptions to this report, decided it on the same two issues and arrived at a conclusion diametrically opposite to that of the Master.

The parties to this appeal, by their counsel, seem to agree that these are the cardinal issues, the determination of which will decide the appeal.

What is the law in this jurisdiction by which the conduct of Receivers in and about the matters committed to them by the order of their appointment is measured?

"The general rule in reference to the accountability of trustees is that they shall use such diligence in the management of the trust fund as a prudent man would do in relation to his own affairs, and that they shall not be charged with loss except for neglect of duty." *Turnipseed v. Sirrine,* 60 S. C., 272, 38 S. E., 423, cited with approval in *Oakes' Estate v. Oakes et al.,* 170 S. C., 167, 169 S. E., 890, 891.

"When he has honestly and faithfully endeavored to acquit himself of his charge, the Court is slow to visit a loss upon him; having however always so much regard to the *cestui que* trust as to prevent negligence and abuse." This is taken from the decree of Judge Shipp, who cites in support of it *Taveau v. Ball,* 1 McCord Eq., 456; *Oakes' Estate v. Oakes, supra; Turnipseed v. Sirrine, supra.* It is quoted in connection with the finding of the Master (and concurred in by Judge Shipp): "The testimony does not warrant the slightest criticism of the Receivers so far as honest conduct is concerned. Apparently everything they did was done in good faith."

The following is from the report of the case of *Jackson Coal & Coke Co. v. Phillips Line,* a Virginia case reported in 114 Va., 40, 75 S. E., 681, 684, from which we quote the Supreme Court of Appeals of Virginia: "The Receivers were, of course, acting under the orders of the Court, and it is very true that the plan to operate the business of the insolvent company, the Phillips Line, was not pursued to a successful result by the Receivers, so as to bring about a sale of the property, etc., as a going concern, as was designed; but the Receivers are not charged with bad faith in the conduct of the business, and the only complaint is that they did not act wisely and failed to make certain reports to the Court which they should have made. In these circumstances, the Receivers were entitled to an allowance of reasonable compensation for their services, and *a fortiori* cannot be charged with the expenses of operation." Appended to the opinion is this note: "For further cases see Receivers, Cent. Dig. Sects 387, 390. Dec. Dig. Sect. 196."

"Property in the hands of the Receiver is *in custodia legis." Peurifoy v. Gamble,* 145 S. C., 1, 142 S. E., 788, 790, 71 A. L. R., 783.

We think that the claimants in this case have misconstrued the order of the Court appointing the Receivers, and have not taken into consideration the obligations assumed by their surety. Let us review these instruments in the light of the

contention of the plaintiffs that the Receivers violated the order of the Court by not filing with the Referee monthly reports of their actions, and by not conserving, from the proceeds of sale of the merchandise which they purchased for replenishing stock, a sum sufficient to pay the purchase price of the goods so purchased.

The order provides that: "That the said Receivers shall * * * proceed to sell and dispose of all of the goods, wares and merchandise carried in the several stores; and if they deem it proper and advisable to advertise and conduct special sales * * *; and if the conditions of trade appear to them to justify such proceedings, then the Receivers are hereby authorized and empowered to use from the proceeds of sales, sufficient funds to replenish saleable stock, and continue to operate the several places of business, *having in view the ultimate payment of all creditors, and the continuation of the business when the creditors shall have been satisfied.*" (Italics added.)

Two purposes of the Court are plainly indicated by this order. That all of the merchandise of the stores of Caldwell, then on hand should be sold and from the proceeds of sales thereof the Receivers might buy other goods. It must be borne in mind that the first consideration of the Court was to provide for the payment of the *then creditors* of W. B. Caldwell. Not one of the present claims, on which this action is based, was then in existence. Plainly the order directs them, the Receivers, to use cash derived from the sales of the goods, wares, and merchandise then on hand with which to buy salable stock to replenish that sold.

It is patent that it is left entirely to the discretion of the Receivers whether they shall attempt to do this, but nowhere is one particle of authority given them to buy *on credit* goods, wares, and merchandise to replenish stock.

The then creditors of the Caldwell stores were paid or satisfied in full before any others were paid. It does not seem reasonable that the Court intended to create another set of creditors, to meet whose claims the Receivers were to em-

bark upon the hazardous field of trade at a time of depression which rendered all such undertakings speculative, and which conditions had brought on the misfortunes of the other proprietor of the stores which had resulted in their being put in the hands of Receivers.

The Receivers, after satisfying the original creditors by paying them three dividends of 10 per cent. each, which these creditors accepted in full satisfaction of their claims, exercising the discretion vested in them by the order of the Court, continued the business by buying from the present claimants, on credit, goods, wares, and merchandise in the aggregate amount of approximately $55,000.00. Some of these claims were paid for in full, other in part, leaving $5,066.78 with which to pay the claims of the present claimants, rent, salaries, wages, water and lights, etc. The sellers of the merchandise to the Receivers, if they dealt with them as Receivers, were bound to apprise themselves, at their peril, of the extent of the authority of the Receivers. It is axiomatic that a Receiver appointed by a Court has no power or authority other than that given him by the order of appointment. 23 R. C. L. § 75.

"A person entering into contract with a Receiver is bound to take notice of his disability to contract, and makes a contract with him at his peril." 23 R. C. L., 77.

We think the Circuit Judge correctly held that these claimants are chargeable with constructive notice that the Receivers were not filing the monthly reports. *Platt v. City of Columbia,* 131 S. C., 89, 126 S. E., 523.

Commenting on the finding by the Master that the defendant, the surety of the Receivers, is liable because of the failure of the Receivers to pay for the replenished goods from the sale of the same, and because the proceeds of the sales of the goods bought by the Receivers were not conserved and applied to the payment of these goods as required by the order of appointment, Judge Shipp said:

" * * * They were authorized in the order to continue the business as 'the conditions of trade appear to them to justify.'

"In the exercise of that discretion they continued the business and bought these goods, which are now not paid for in part; but the only reason for that non-payment which the record discloses, is that the business did not make a sufficient profit. The record shows that certain amounts were received by the Receivers for the sale of the goods; but certain amounts were expended by them for clerk hire and other operating expense; and that the entire remainder was used to pay for the goods purchased as far as that remainder would go, including substantial payments to many of these present claimants. In that operation, under the business conditions existing during that period (1932-1934), the Receivers bought goods totaling about $55,000.00, upon which they paid about $50,000.00; leaving the unpaid balance of about $5,000.00, recovery for which is now being sought.

"These claimants have failed to show any misappropriation or misapplication of funds by the Receivers or any failure to account for the property and money handled by them. The Special Referee has found that 'the testimony does not warrant the slightest criticism of the Receivers so far as honest conduct is concerned. Apparently everything they did was done in good faith'."

We concur in this conclusion of the Circuit Judge.

The claimants, plaintiffs herein, contend that by reason of the fact that the Receivers failed to file the monthly reports which the order of appointment directed them to file, the plaintiffs have suffered loss and damage. There will be no contest of the argument that the Receivers are bound to follow and obey the directions of the authority by which they are appointed. But it is just as true that unless loss and damage have been suffered by the *cestui que* trust, no liability is incurred by the Receivers, nor by their surety. We concur with the Circuit Judge that there is no proof that the failure to file the monthly reports was the

cause of loss to plaintiffs. Appellants argue that the fact that the plaintiffs have not been paid for the goods bought of them by the Receivers to replenish stock is sufficient proof that the loss was caused by the failure to file the reports. We think that is in the nature of *non sequitur*. Evidently the plaintiffs did not lay much stress upon this failure of the Receivers. They never made any inquiries, nor sought any information of them, nor of the Referee upon the subject. It is doubtful if they knew of this provision of the order of appointment; and, if this be so, they were culpably negligent of their own interests. They knew they were dealing with Receivers. They were chargeable by law with informing themselves of the extent of the powers and authority given to the Receivers. It may be that this is the reason that not one of the 32 claimants has gone on the stand to testify that he was misled to his loss by the failure of the Receivers to file monthly reports.

Moreover, the original creditors, at whose instance and on whose behalf the receivership was appointed, instructed the Receivers that these reports need not be filed. These creditors have been satisfied by the settlement of their claims then existing. Some of them continued to sell goods to the Receivers and are among the present claimants; they knew that the reports were not being filed. They say, themselves, in the complaint that the reason their claims were not paid was that the Receivers failed to pay for the merchandise purchased of them, with the proceeds of the sales thereof, and failed to hold in reserve "sufficient funds" from the sale of merchandise to pay for it, but diverted it to other purposes, leaving the merchandise so purchased unpaid for.

There is no particle of evidence that the funds of the receivership were applied to any purpose not authorized by the order of appointment. It appears that they bought of these plaintiffs approximately $55,000.00, and paid them approximately $50,000.00; leaving due them $5,000.00; after applying the remainder arising from the sale of goods to the payment of salaries, for wages, taxes, water, and lights, "and

such other expenses as may be necessary to conserve the property and to conduct the business," as they were ordered by the Court to do, there was not left enough to pay the balance due the claimants. In fact, the claims for rent, salaries, wages, taxes, water, and lights were not paid in full.

When one considers the peculiar, untoward conditions, and the prevailing depression under which the Receivers operated, it would seem that they are entitled to commendation, rather than censure.

They were invested with large discretion in the performance of their duties and functions as Receivers, and there is an utter lack of any proof that they have abused that discretion. On the contrary, the Master and Circuit Judge concur in finding that their conduct of the business is above criticism. If this be true, no liability attaches to them, and, therefore, no liability attaches to their surety.

Having reached this conclusion, it is not necessary to consider the motion to dismiss the appeal.

The decree of Judge Shipp is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.