15883

BARRINEAU *ET AL. v.* BARRINEAU *ET AL.*
(40 S. E. (2d), 41)

*Mr. J. Frank Eatmon,* of Kingstree, for Appellants,

*Messrs. Lee & Shuler*, of Kingstree, for Respondents,

November 7, 1946.

PER CURIAM : After a careful study of the record in this case, we are of the opinion that the conclusion reached by the learned trial Judge in his decree is correct. In that we are in accord with the result thereof, the exceptions thereto are overruled.

Let the said decree be reported.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Stukes, Taylor and Oxner concur.

### Order of Judge Grimball

This matter was heard by me at Chambers, Charleston, South Carolina, on July 3, 1942, upon exceptions to the Report of the Referee; J. Frank Eatmon, Esquire, appearing for the plaintiffs, and Rogers E. Harrell, Esquire, of the firm of Lee & Shuler, appearing for the defendants. The ac-

tion was commenced by plaintiffs by the service of the usual Summons and Complaint on or about July 22, 1941. Plaintiffs are asking for damages because of an alleged breach of a Guardian's bond, and judgment is sought against both the principal, the defendant J. D. Barrineau, and the surety, the defendant United States Fidelity and Guaranty Company.

It appears that J. D. Barrineau was appointed Administrator for the estate of his father, J. Marion Barrineau, deceased, on October 4, 1919, by the Probate Court for Williamsburg County, South Carolina. As such Administrator, considerable funds came into his hands which he deposited in the Bank of Williamsburg. Mr. Barrineau was discharged as Administrator October 18, 1920, and at that time he had funds in the Bank of Williamsburg belonging to the plaintiffs and one Sarah Ruby Barrineau, all of whom were minors at that time. It appears that the amount of funds to which these plaintiffs and their sister, Sarah Ruby Barrineau, were entitled was $1,573.00. On October 13, 1920, Ida Barrineau petitioned the Probate Court for Williamsburg County for his appointment as General Guardian of these infants, who are his half-brothers and half-sisters, and on the same date he furnished a bond with the United States Fidelity and Guaranty Company as surety for his acting as such Guardian. On October 16, 1920, letters of guardianship were granted to Mr. Barrineau by Hon. P. M. Brockinton, Probate Judge. At or about this time the funds belonging to the infant wards were transferred from the account of J. D. Barrineau, Administrator, to the account of J. D. Barrineau, as Guardian, and the funds were in the Savings Department of the Bank of Williamsburg. Before the end of the first year of guardianship, Hon. P. M. Brockinton, Probate Judge, died, and Hon. W. E. Snowden became the Probate Judge for Williamsburg County. On October 15, 1921, the first annual return of the Guardian was made showing that the funds in question were in the Bank of Williamsburg. The second and third annual returns were duly made, each of which shows the funds to be in the Bank of Williamsburg, and these returns are in the handwriting of the

Probate Judge himself. The testimony then shows that the remaining returns were duly made by the Guardian, and that they were actually prepared by the Probate Judge, although they are in type. All of these returns were duly filed, and the testimony discloses that the filing of a return by the Probate Court is tantamount to a written approval of such return. On October 17, 1927, letters dismissory were issued by the Probate Court to J. D. Barrineau, as Guardian, and on the same date a new bond was given by him, with Ida Barrineau as surety. The seventh and final return made by the Guardian is dated November 28, 1928, and it shows that a large portion of the funds were lost in the Bank of Williamsburg, which had become insolvent some time during the year 1925, and also shows that a ten per cent. dividend in cash was declared, and that the Guardian had taken advantage of a twenty-five per cent. dividend by taking up a mortgage in the bank for the benefit of his wards. Each of these returns shows that the Guardian from time to time paid out expenses and costs of his guardianship, such as bond premiums, and other expenses. Some time during December, 1922, the Guardian settled with Sarah Ruby Barrineau, one of his wards, by paying to her all of her share of the funds and for that reason she is not made a party to this action.

In the complaint of the plaintiffs, several specifications of negligence on the part of the Guardian are set forth. However, only one of these specifications is supported by the evidence, and that specification is that the Guardian "failed and neglected to obtain the approval of the Probate Court or any other Court in Williamsburg County before depositing said sum of money, the property of his wards, the plaintiffs named, in the savings department of the Bank of Williamsburg". The testimony shows that no written approval by the Probate Court was obtained by the Guardian before such funds were deposited in the Bank of Williamsburg or transferred from the name of J. D. Barrineau, Administrator, to his name, as Guardian.

This matter was referred to Philip C. Stoll, Esq., who held a reference on March 26, 1942, and thereafter filed his report dated June 5, 1942. In his report, the Special Referee finds that there has been a violation of Section 9050 of the Code which requires a Guardian, etc., to obtain written approval of the Court having jurisdiction of the funds before investing or depositing in savings bank. The referee recommends that plaintiffs have judgment against the two defendants for the amount of money lost in bank, with the amount of interest which this money had earned, less certain credits to which the Guardian is entitled.

Exceptions are filed by plaintiffs and defendants. However, under the view which I take of this case, there is no need to consider any of the exceptions other than those filed by the defendants. These exceptions are three in number, the first one being that the Special Referee erred in finding that the Guardian violated the provisions of Section 9050, *supra,* because there was a substantial compliance with the statute in that the Probate Judge knew of the deposit of such funds, the transfer thereof from the name of the Administrator to the name of the Guardian, and approved the transfer and deposit many times by filing the annual returns of the Guardian. The second exception is to the effect that the Referee erred in not finding that the act of the Guardian with reference to the funds belonging to his wards constituted merely a deposit and not an investment within the meaning of the statute, and the third exception is that the Referee erred in not finding and holding that the Probate Judge went with the Guardian to the bank and was present when the transfer of funds was made from the name of J. D. Barrineau, Administrator, to the name of J. D. Barrineau, Guardian. I do not deem it necessary to consider these exceptions separately for the reason that I think they raise one main question, and it occurs to me that the exceptions should be considered somewhat in their inverse order. The second exception raises the question as to whether or not the act of the Guardian in having the funds transferred from

his name, as Administrator, to his name, as Guardian, in the savings department of the Bank of Williamsburg constitutes an investment within the meaning of the governing statute or was simply a deposit. Section 9050 Code of Laws S. C., 1932, provides as follows:

"Any guardian, committee, trustee, executor, administrator or other person or corporation chargeable with interest on funds in hand belonging to either ward or other person or corporation is hereby authorized and empowered to invest same in bonds of the State of South Carolina, or some political division thereof, or in bonds of the United States, or to deposit same in some savings bank, such investment or deposit, however, to be first approved by the Court having jurisdiction of such fund, and in his account he shall not be chargeable at a greater rate of interest than such fund so earns."

It appears that each of the wards was entitled to a little over Two Hundred ($200.00) Dollars, and it is clear that the Guardian withdrew money from the bank from time to time for the purpose of paying the expenses of his administration, and during the year 1922, he actually settled with one of his wards in full before the Bank of Williamsburg became insolvent. Therefore, I do not believe that the mere fact that the funds in question were on deposit in the Savings Department of the Bank of Williamsburg would make the Guardian chargeable with interest within the meaning of Section 9050, *supra,* and this has been the holding of the Supreme Court of this State in the following cases:

*Chandler v. Britton et al.,* 197 S. C., 303 (311), 15 S. E. (2d), 344; *Brannon v. Woodward,* 175 S. C., 1, 178 S. E., 249; *Bowen v. Strauss et al.,* 175 S. C., 23, 178 S. E., 252.

The only breach of the bond upon which plaintiffs rely is that the defendant, J. D. Barrineau, as Guardian, did not obtain approval of the Court before the deposit or transfer of the funds in question, there being no charge of bad faith

on the Guardian's part and no evidence that the bank in question was not a bank of good credit and standing in the community. Therefore, even if Section 9050 of the Code should be applicable, it is clear to me that there has been a substantial compliance with the provisions of this statute in that the Probate Court at all times knew where the funds were deposited, and made no objection thereto. The fact that annual returns were made each year by the Guardian, these returns being prepared by the Probate Judge himself, and each of said returns showing where this money was deposited, shows conclusively that the Probate Court knew and approved of the Bank of Williamsburg as a depository for the funds in question. In addition to the fact that there is no charge of bad faith on the part of the Guardian, the evidence shows that he went beyond the requirements of his office to protect his wards in that he spent the sum of Two Hundred ($200.00) Dollars out of his own pocket for the benefit of his wards after the insolvency of the Bank of Williamsburg in order to take up a mortgage for his wards, and he never claimed any commissions until the institution of this suit.

Therefore, if there is any violation of Section 9050, it is a technical violation, and it is clear to me that if this is a case where approval of the Court should have been obtained, the Guardian could have readily obtained it had he known to ask for it or had the Probate Judge known to advise him to obtain it. The holding of the Court with respect to such technical requirements of the law in this State is clear, and where the statutory requirement of obtaining the consent and approval of the Probate Court is considered a mere technical violation and does not subject the Guardian to a charge of misconduct in failing to obtain such approval, the Court has consistently held that the Guardian should not be responsible where a loss occurs.

See *Glenn v. Worthy*, 169 S. C., 263, 168 S. E., 705; also see *Ellis Estate v. Brown et al.*, 162 S. C., 133, 160 S. E., 260.

I have given careful consideration to this case and have concluded that the Special Referee is in error in his findings because I do not believe that his report announces the justice in the case and I do not believe that the Guardian and his surety should be held liable.

*It Is, Therefore, Ordered* That the Report of the Special Referee herein be, and the same hereby is, reversed; that the exceptions of the defendant be, and the same hereby are, sustained; that the exceptions of the plaintiffs be, and the same hereby are, overruled; and that the complaint in this action be, and the same hereby is, dismissed, and that the costs of this action be taxed against the plaintiffs.