16230

PRATHER v. CLOVER SPINNING MILLS, INC., *ET AL.*

(54 S. E. (2d) 529)

*Messrs. Finley & Turner,* of York, *for Appellants,*

*Messrs. Charles B. Ridley,* of Rock Hill, *and James L. Moss,* of York, *for Respondent,*

June 15, 1949.

STUKES, Justice.

Plaintiff (respondent) recovered verdict and judgment for $1,000.00 actual and $1,000.00 punitive damages against defendants (appellants) upon her amended complaint in which it was alleged in substance, as follows: She, her husband and other members of her family had for years been

employees of the appellant, Clover Spinning Mills, and occupied one of the employees' houses and the husband's contract therefor was complied with by the payment of rent; plaintiff's son by a former marriage, David Laws, was in the U. S. Navy and in foreign service and her husband suffered a paralytic stroke in February, 1945, was thereafter unable to work, and separated from plaintiff; the officers and agents of Clover Spinning Mills insisted that plaintiff continue in its employ and agreed that plaintiff and her family should continue to occupy the dwelling house so long as she continued in the employment; this she did and paid the rent although she was financially dependent upon her sailor son; about January 25, 1946, still employed, plaintiff received notice from the Mills to vacate the dwelling by the 4th of February, but her husband and her son in naval service were not so notified; thereupon plaintiff paid the Mills $6.00 rent, which was all that was due to that date; she continued in her employment for two weeks more and on February 7th was served with a Rule to Show Cause, issued by the local magistrate, why she should not be ejected from the residence; with the rule was the affidavit and application of the superintendent of the Mills in which it was averred under oath that plaintiff's former employment had been terminated, which was not the fact because upon the date of it plaintiff was still employed by the Mills and so continued for several days thereafter; plaintiff thereupon informed the officers and agents of the Mills of her continued employment and of her dependence upon David Laws who was still absent from home in the service of the navy; nevertheless defendants proceeded and on February 11, 1946, procured from the magistrate an order of ejectment upon the ground that plaintiff had never had a contract for occupancy of the house; subsequently, on March 19, 1946, the defendants invaded her lawful possession of the premises and willfully, maliciously, etc., removed her furniture and other household and personal effects and placed them in the street, roughly handling and thereby damaging them and exposing them to the elements,

all of which was unlawful and in violation of the Soldiers' and Sailors' Civil Relief Act, 50 U. S. C. A. Appendix, § 501 *et seq.,* which was applicable to plaintiff and her son, David Laws. The prayer was for $11,000.00 actual and punitive damages.

Defendants demurred to the complaint which was over-ruled by order, in part as follows:

"The complaint dose indeed allege, in substance, that proceedings were duly had before the Magistrate as required by the statute law of South Carolina, Code, § 8813. While there is no allegation that she appeared in the Magistrate's Court or set up her defenses, yet it was her duty to do so, insofar as our State law is concerned, and if the case rested on our local law alone I think that the demurrer should be sustained. *Williams v. Columbia Mills,* 100 S. C. 363, 85 S. E. 160.

"However, the complaint further alleges that the defendants did not proceed in accordance with the requirements of the Federal statute known as the Soldiers' and Sailors' Civil Relief Act. The complaint alleges that the plaintiff was dependent upon her son, David Laws, and that she so notified the defendants. These facts must be taken as true for the purposes of the demurrer, as well as the allegation that the son was absent in the armed forces.

"The Federal statute provides that no eviction shall be made during the period of military service of any premises occupied as a dwelling by any dependent of a person in the military service, except upon leave of court granted upon application therefor or granted in an action or proceeding affecting the right of possession. The statute contains various other provisions for the benefit of persons in the military service.

"The question then arises, is this purely a matter of defense, which the tenant should have raised by a proper plea in the Magistrate's court in order to have the advantage of it; or is it a matter going to the jurisdiction of the Magis-

trate as to the subject-matter of the proceedings, and to his power or authority to act in the case?

"The Constitution of the United States is the supreme law of the land. It gives the Congress the power to declare war, to raise and support armies, to provide and maintain a navy, and to make all laws which are necessary and proper for carrying into execution these powers. Art. 1, Section 8. Pursuant to this grant of authority the Congress had adopted the Soldiers' and Sailors' Civil Relief Act and its provisions are just as binding upon landlords and courts as are the provisions of our Code section 8813.

"The court of Magistrate has only such power, or authority, or jurisdiction to proceed in eviction cases as is allowed by the applicable statute law. *Goodgion v. Latimer,* 26 S. C. 208, 2 S. E. 1; *Stewart-Jones Co. w. Shehan,* 127 S. C. 451, 121 S. E. 374. During the war period the Federal statute must be complied with in order that the Magistrate may have authority to proceed. This goes to the root of his power, and affects his jurisdiction of the subject-matter.

"The evidence at the trial may show that the plaintiff is not dependent upon her son, or that she did not notify the defendants of that fact. At this time, however, we are bound by the allegations of the complaint.

"It may be possible, also, that the questions of dependency and of the Soldiers' and Sailors' Act were raised and adjudicated before the Magistrate, but those facts, if they exist, do not appear on the face of the complaint.

"It is accordingly ordered that the demurrer of the defendants be, and it is hereby, overruled, and the defendants are granted leave to serve an answer within twenty days after notice of the filing of this order."

The foregoing order has been almost fully quoted because there was no appeal and it is the law of the case. Appellants construe it in their brief, as follows:

"The questions left by this Order for the trial in the case were:

"1. Whether the plaintiff was dependent upon her son.

"2. Whether her son was in the armed forces, and

"3. Whether the question of dependency under the Soldiers' and Sailors' Relief Act was raised and adjudicated before the Magistrate."

The answer put in issue the matters reserved in the order and the case was tried before a jury and resulted as aforementioned.

Plaintiff testified that her son in service was formerly employed by Clover Spinning Mills, but he did not enter the navy from that employment. She had been so employed at two different times, the last covering a period of eighteen months, and both aggregating several years. When her husband began work at the Mills he got the house along with the job, but she paid the rent in her name. When he quit work two of her superiors in the Mills went to see her and asked her to continue working and assured her that she could occupy the house so long as she worked. Her son, David, upon whom she was dependent, was in the navy overseas at that time and her three younger children lived with her, only one of them old enough to work. Her testimony fairly substantiates the other allegations of the complaint which are stated in detail hereinabove. She further testified that she unsuccessfully tried to find a house in which to move her family after receipt of defendants' first notice to vacate, which was on January 25th. She produced this notice which was in the form of a letter dated January 24, signed by E. B. Blackstock for the Mills, also the latter's affidavit which he executed as manager of the Mills dated February 6th, in which he erroneously stated that plaintiff's employment in the Mills had been terminated; and also the magistrate's writ or rule, dated February 6, and requiring that cause be shown before him on February 11th why plaintiff should not be ejected from the premises. On the back of the last mentioned document was the following endorsement by the magistrate:

"Ejectment is ordered 11 o'clock A. M., February 11, 1946.

"Tenant said that she had never had contract for house, that her husband had a contract for house, and he left, and they let her stay in house, and work here."

"/s/ H. A. Quinn."

There was also identified and introduced in evidence by plaintiff her last pay ticket from the Mills which was for the week ending February 9, 1946 and showed her weekly wages to be $31.85 before deductions for income and Social Security taxes. She testified that at the magistrate's court she asked for Mr. Blackstock and when he came he told her that she was a good employee but that her boys had made trouble, referring to the younger ones at home. She told him and the magistrate about her son in service, who had just gotten home on the Saturday before and was greeted with the eviction papers. She had no attorney and was told by the magistrate that he would give her three days to vacate the property. However, the actual eviction and claimed damage to the furniture, etc., were on March 19th. David sent her money, quoting her, "as much as once a month."

Plaintiff's only other witness was her son, David Laws, who put in evidence his honorable discharge from the navy which was issued to him at Charleston on Feb. 8th. He filled papers for an allotment from his navy pay to his mother but was told that the papers were lost and he filled another application but the money was never sent direct to his mother; it accumulated and was aferward drawn by him. Meanwhile he sent money irregularly to his mother by means of money orders obtained on ship. He was discharged from service on February 8th, which was Friday, and arrived at home on Saturday. Learning of the eviction notice to his mother he went to Charlotte to consult a naval officer and for that reason did not attend the hearing before the magistrate. In addition to the money orders to his mother

he sent her money when he was in this country and gave to her when home on leave.

At the conclusion of the plaintiff's evidence motion for nonsuit was made by the defendants and was overruled.

The magistrate testified in behalf of the defendants that at the hearing before him on the rule to show cause he told plaintiff that the proceeding was for eviction and inquired whether she was dependent upon anyone in the Armed Services, to which she replied in the negative. He said that he was familiar with the Soldiers' and Sailors' Civil Relief Act, had a copy and was advised by the County Attorney. He said with respect to his signed notation on the back of the writ, which is quoted hereinabove in the summation of plaintiff's testimony, as follows: "After the hearing I wrote down just about the sense of the hearing, and that was all." He signed the warrant of ejectment on March 5th and thought that it was executed on March 19th.

The magistrate's constable, who, with a deputized assistant, executed the warrant, also testified for the defendants. Between the hearing on it Feb. 11 and the execution on March 19, he went to see plaintiff at the house several times in an effort to have her peaceably vacate and she said she had nowhere to move and threatened to kill him if he undertook to eject her. Finally he executed the warrant over plaintiff's protests and profane abuse. As a precaution against violence the witness had the Chief of Police of Clover to go with him and his deputy. Among plaintiff's belongings was an unloaded shotgun which she took back into the house after it had been put into the street with her household goods, but no violence occurred. The furniture, etc., was handled with care. After plaintiff and the other members of the family were put out of the house, it was fastened and the officers left. It had taken them about an hour.

There was no evidence in reply and after the defendants closed their case they moved again for nonsuit upon the

grounds that compliance with State law was established and if the Federal Act was applicable it was available only by appeal from the Court of Magistrate, but that it was not applicable. The court ruled that the ground in reference to the State law was well taken and was, in fact, concluded by the unappealed order on demurrer; the latter left open the issues of plaintiff's financial dependence upon her son and whether she notified defendants of it, which issues of fact should be submitted to the jury.

After the verdict appellants moved for judgment *non obstante veredicto* and in the alternative for a new trial *nisi* upon several grounds which need not be here noticed because those of them which are preserved by the exceptions will be later discussed. The motion was refused and this appeal followed.

Twice in their brief on appeal the appellants concede, in effect, the efficacy of the Federal Act to sustain the action and recovery, if it was applicable to the particular facts of the case. At one place they say: "It is not disputed that the plaintiff was entitled to the protection of this act so long as her son was a member of the armed forces." At another, this: "It is undisputed that the plaintiff was entitled to the benefits accorded under the Soldiers' and Sailors' Relief Act while she had a son in the armed forces, if she was in fact dependent upon him for support." This combines with the unappealed order on demurrer to narrow the scope of our inquiry to search for error only in the trial of the remaining issues.

The Soldiers' and Sailors' Civil Relief Act of 1940, 54 U. S. Stat. 1178, amended 1942, 56 U. S. Stat. 771, Title 50 U. S. C. A. Appendix, §§ 501, 530, is, in part, as follows:

"(1) No eviction or distress shall be made during the period of military service in respect of any premises for which the agreed rent does not exceed $80.00 per month, occupied chiefly for dwelling purposes by the wife, children, or other dependents of a person in military service, except

upon leave of court granted upon application therefor or granted in an action or proceeding affecting the right of possession.

"(2) On any such application or in any such action the court may, in its discretion, on its own motion, and shall, on application, unless in the opinion of the court the ability of the tenant to pay the agreed rent is not materially affected by reason of such military service, stay the proceedings for not longer than three months, as provided in this Act, or it may make such other order as may be just. Where such stay is granted or other order is made by the court, the owner of the premises shall be entitled, upon application therefor, to relief in respect of such premises similar to that granted persons in military service in sections 301, 302, and 500 of this Act (sections 531, 532, and 560 of this Appendix) to such extent and for such period as may appear to the court to be just.

"(3) Any person who shall knowingly take part in any eviction or distress otherwise than as provided in subsection (1) hereof, or attempts so to do, shall be guilty of a misdemeanor, and shall be punishable by imprisonment not to exceed one year or by fine not to exceed $1,000.00, or both."

A copy is also conveniently printed as a part of the annotation on the subject which begins at page 1366 of Vol. 147, A. L. R. The Act is at pages 1395-1410, inclusive.

It is seen that the remedies of eviction and distress shall not be pursued except upon "leave of court granted upon application" (which necessarily means upon motion of the landlord) or "granted in an action or proceeding affecting the right of possession." Subsection (1), above. The evidence in this case has been narrated in sufficient detail to demonstrate the failure of appellants to make any effort to comply with this provision of the law.

Appendix, § 532 (3), incorporated by reference in subsection (2) above, is as follows:

"(3) No sale, foreclosure, or seizure of property for nonpayment of any sum due under any such obligation, or for any other breach of the terms thereof, whether under a power of sale, under a judgment entered upon warrant of attorney to confess judgment contained therein, or otherwise, shall be valid if made after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 (Oct. 6, 1942) and during the period of military service or within three months thereafter, except pursuant to an agreement as provided in section 107 (section 517 of this Appendix), unless upon an order previously granted by the court and a return thereto made and approved by the court."

And Appendix § 560 (2) similarly incorporated is:

"(2) No sale of such property shall be made to enforce the collection of such tax or assessment, or any proceeding or action for such purpose commenced, except upon leave of court granted upon application made therefor by the collector of taxes or other officer whose duty it is to enforce the collection of taxes or assessments. The court thereupon, unless in its opinion the ability of the person in military service to pay such taxes or assessments is not materially affected by reason of such service, may stay such proceedings or such sale, as provided in this Act, for a period extending not more than six months after termination of the period of military service of such person."

It is uncontroverted in the evidence that the rent on the house was paid, which makes of value the following decision, stated from the syllabus of the report: "A landlord who had leased an apartment to a tenant and his wife, which apartment was shared with the tenant's brother and father, might not, so it was held in *Scanlan v. Garrick,* 1945, 326 Ill. App. 461, 61 N. E. (2d) 773, treat the apartment as abandoned by the lessee or treat the father and brother as trespassers, or lawfully lease the premises to other tenants after the tenant entered the Army, after which time his wife

paid or tendered rent each month to the landlord." 158 A. L. R. 1461.

Appellants have argued their exceptions under questions stated in their brief, which will be considered *seriatim*. The first is whether the pertinent Federal Act was applicable to plaintiff and her son at the time of the Magistrate's Court hearing on Feb. 11, 1946 and at the time of the actual eviction on the following March 19th. The answer must be in the affirmative in view of the provisions of the Act to which we have adverted. The eviction proceedings were in fact commenced by the notice of Jan. 24th to vacate; the rule was obtained from the Magistrate on Feb. 7th. Respondent's son was discharged from service on Feb. 8th. The proceedings were under way at that time. It would be unreasonable to hold that because the final step was not taken (the procurement of the writ or warrant of ejectment) until Feb. 11th the proceedings were not in violation of the terms of the Act. Such construction would thwart the intent which is expressed in Sec. 100, Tit. 50 U. S. C. A. Appendix, § 510, 147 A. L. R. 1395. Moreover, the magistrate was empowered upon consideration to stay eviction up to six months after discharge, under the provisions of the Act which have been quoted.

The second question denies the sufficiency of the evidence of knowledge by the defendants of the service in the navy of David Laws and the dependence of his mother upon him. However, the full statement of her testimony, *supra,* discloses ample evidence of notice to the representatives of the Mills that respondent was financially dependent upon her son who was in service until a date which fell between the issuance of the rule and the hearing upon it.

Appellants' third question implies the assertion that the issue of dependency was adjudicated before the magistrate and thereby became *res judicata* between the parties to the action. There is, however, no evidence of such an adjudication and the written memorandum of judg-

ment of the Magistrate, endorsed and signed by him on the writ, negates it. See the quotation of the endorsement hereinabove. More important again, however, is the failure of appellants to obtain the leave of court to proceed, required by the Act, as pointed out above. Without that, the proceedings before the magistrate must be held to have been void.

The fourth question is aimed at the contended impropriety of the award of punitive damages. It ·is quoted, as follows: "Was there any evidence or testimony offered by the plaintiff that the defendant acted in a high-minded (handed?) or reckless manner and knowingly violated the rights of the plaintiff?" Defendants' failure to follow the Federal statute, with knowledge of plaintiff's dependence upon her son in service, to which she testified, fully justified the verdict for punitive damages; it invalidated the whole proceeding. Significantly, there was no motion for directed verdict with particular reference to punitive damages and no request for instruction of the jury against inclusion of such in their verdict, if they found for plaintiff. *Entzminger v. Seaboard Air Line Ry.,* 79 S. C. 151, 60 S. E. 441. *Williams v. Columbia Mills,* 100 S. C. 363, 85 S. E. 160.

There remains for disposition the fifth and last question. In the course of the lengthy instructions to the jury the Court said: "Now, if the defendant knowingly violates her (plaintiff's) rights, and knowing she was alleged to have been dependent on the sailor boy, her son, and knowingly damaged her by taking away her employment, and leaving her without any other means of support, and knowingly put her out of the house without advising the Court of the fact," etc. This is made the basis of exception for the reason that the taking away of plaintiff's employment was no part of the cause of action alleged in the complaint and was therefore not an issue. This is sound criticism of the charge but the objectionable remark of the court was manifestly the result of inadvertence. Nowhere else in the

instructions is there any other such reference. It was a mis-statement of the issues, and, under decisions too numerous to cite, it became the duty of counsel to direct the attention of the court to the error, especially in view of the invitation to counsel at the conclusion of the charge to call attention to any pertinent matter, which counsel for appellants expressly declined. There is no reversible error.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.