17436

Phillip C. FURBECK, Respondent, v. The CREST
MANUFACTURTURING COMPANY, Inc., Appellant
(103 S. E. (2d) 920)

*Messrs. B. E. Nicholdson,* of Edgefield, and *R. Milo Smith,* of Lexington, *for Appellant,*

*Messrs. Marion B. Holman,* of Batesburg, and *Hubert E. Long,* of Lexington, *for Respondent,*

June 4, 1956.

TAYLOR, Justice.

This appeal comes from the Court of Common Pleas ■ for Lexington County wherein respondent sought damages for alleged breach of contract of employment. Appellant filed demurrer to the complaint which was overruled by Order of the Honorable E. H. Henderson, presiding Judge. Thereafter, answer was duly filed setting up the defenses that respondent's employment was for an indefinite period or by the week and terminable by either party at will. The case came on for hearing before the Honorable James M. Brailsford, Jr., presiding Judge and a jury. Timely motions for nonsuit and directed verdict were made by appellant and overruled. At the conclusion of all the testimony, Judge Brailsford directed a verdict for respondent in the amount of $3,722. This being stipulated as the correct amount of damages provided Judge Brailsford did not construe the contract as being invalid in that it was for an indefinite period of time.

Respondent had previously worked for appellant on a weekly basis at appellant's Detroit, Michigan, and Edgefield, South Carolina, plants and was assigned to appellant's plant in Batesburg, South Carolina, in 1952, where he continued until his discharge June 10, 1955.

On May 28, 1955, following a conversation between Mr. Daniel C. Larkin, President of appellant Company, and respondent, Mr. Larkin addressed the following communication to respondent:

"Inter-Organization Communication
"The Crest Company

"To P. C. Furbeck
"From D. C. Larkin

"Date May 28, 1955
"Subject

"Dear Phil:

"Sorry for the few days delay in writing you, but when I left New York I had to go to Akron and didn't return to Detroit as soon as I expected.

"Here is the dope, Phil. You understand that in view of the seat cover industry for the past eighteen months our operation overall has not been profitable. I stretched myself as far as I could in attempting to carry on as we did when our business was profitable, but we have now reached the point where we must operate for awhile as economically as possible.

"We want you to take to the road. You will do, I know, an outstanding job as you have the background to be successful and we must have your cooperation in accepting this offer to join our sales force. This is the kickoff for the start, and as volume improves we will not be stingy in our appreciation.

| "Salary | $100.00 weekly |
| "Expenses | $10.00 per day while on the road only. No expenses when at home. |

"We will furnish you with a lease car, and all car operating expenses will be paid by us, which will include gas, oil, tires, wash, storage, etc. We find a lease car is the most economical in every respect.

"We would have you work New York State and New England until about October 1st, and then the Southeastern states until April 1st.

"If this arrangement is agreeable to you, we would like you to arrange to come to Detroit—either by train or plane—

to arrive here on Monday, June 6th so we can inform you fully on the line and get you set to start in New York City on June 13th.

"Advise me by phone or wire if we can look for you on the 6th.

"Regards,

"(signed) DCL

DCL :em."

Respondent accepted the proposal embodied in the above communication by telephone. Thereafter, appellant addressed the following inter-organization communication to Respondent, dated June 4th, 1955:

"Inter-Organization Communication
"The Crest Company

"To P. C. Furbeck
"From D. C. Larkin

"Date June 4, 1955
"Subject

"Dear Phil:

"Ray has no doubt given you my message not to come to Detroit. Since talking to you, and since my last letter, we have had several discussions here regarding our complete operation. It is a long story, but you know that over the last eighteen months—since the seat cover business took a tail spin—we have spent a great amount of money to rebuild our volume with new items. This has been costly—too much so —and in reviewing our Jobber sales, we are not making the progress we should for the large outlay of money and effort.

"The profit we have from the Car Manufacturer is going down the drain thru losses on Jobber business, and in reviewing these losses this week we had to make the decision to bring these losses to a stop.

"As a result I am cutting our selling and overhead costs to the bone. I have no other choice, I have put a lot of my private funds in the business over the past year, and I cannot

continue to do this. What I am compelled to do is certainly not to my liking, or my nature. I would rather do anything but write you this letter.

"Phil, I must ask you to resign your position with the company effective Friday, June 10th. I will send you your salary check for this coming week, plus two additional weeks. If our plans for 'Sloppy Joe' and the Car Manufacturer on the Twins go as they appear at this time, I will do my best to get you back on our payroll by early fall, if you are unemployed at that time.

"I deeply regret that conditions are such this must come about. You have been loyal, and given your best to me and our Company. What more can any man do. Believe me, I am

"Always your friend,

"(signed) Dan Larkin

"DCL:em"

Appellant, throughout the trial, took the position that the contract being unambiguous was to be construed by the Court but that it was susceptible of being construed only as being for an indefinite period of time and nonenforceable by reason thereof, *Shealy v. Fowler,* 182 S. C. 81, 188 S. E. 499; *Orsini v. Trojan Steel Corp.,* 219 S. C. 272, 64 S. E. (2d) 878. With this contention we are unable to agree as the letter of May 28, clearly stated: "We would have you work New York State and New England until about October 1st, and then the Southeastern states until April 1st." It is apparent that the only indefinite date was that which related to the time respondent would terminate his work in New York State and New England and continue thereafter in the Southeastern states until April 1st. We are, therefore, of opinion that the trial Judge was correct in construing the contract as employing respondent from June 13th, 1955, to April 1st, 1956, such employment to commence in New York and to continue in the New England section until about October 1st, and thereafter in the Southeastern section of the country until April 1st, 1956.

Appellant next contends that the trial Judge erred in construing Judge Henderson's Order overruling appellant's demurrer as establishing the law of the case to be that it "can't be held on the face of the writing of May 28, 1955, to be a contract of employment for an indefinite duration." There was no appeal from Judge Henderson's Order which renders appellant's position at this time untenable, *Prather v. Clover Spinning Mills, Inc.*, 215 S. C. 103, 54 S. E. (2d) 529. Further, we are of opinion that there is no merit in this contention. The remarks of Judge Brailsford with respect to the Order of Judge Henderson were as follows:

"* * * 'I believe that it would be better to overrule the demurrer and let the Court at the trial of the case determine just what the contract was.' Now, you can't escape this, that under the law of this case, as established by this Order, it can't be held on the face of the writing to be a contract of indefinite duration. The only possible question still left open is whether or not there is any ambiguity on the face of the writing to be resolved by the jury under the testimony. I don't see any escape from that. *The question is still open as to whether or not on the face of the writing it does establish employment to April 1st. But Judge Henderson certainly wasn't called upon to pass on that, in ruling on the demurrer. He had to go no further than was necessary to overrule the demurrer. I think the question is still open as to whether or not on the face of the writing it's a contract of employment until April 1st.*" (Emphasis ours.)

This question must also be resolved against appellant's contention.

We are of opinion that all exceptions should be dismissed, and It Is So Ordered.

Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.